## STEWART & COMPANY, Inc., *vs.* JOHN W. HARMAN.

*Master and Servant—Injury Caused by Breaking of Glass in Window—Unexplained Accident—Duty to Inspect Appliances.*

One of the duties of the plaintiff, an employee in defendant's store, was to open in the morning and close in the evening the large windows on one of the floors of the building. There was in each window a single pane of heavy plate glass, and the window was opened and closed by means of fixed pivots at the top and bottom. Plaintiff had been doing this work for some months when on one occasion, immediately upon his closing a window, broken glass fell from it upon him, causing the injuries to recover damages for which this action was brought. There was no evidence to show how the glass was broken. It was proved that the window had been properly constructed in the first place, and that, at the time of the accident, the strips or beads which held the glass in the frame were in good condition. Afterwards, strips slightly different in character were put in the window. Plaintiff alleged that the defendant had failed in his duty to maintain the window in good condition. *Held,* that the mere happening of this accident creates no presumption of negligence on the part of the defendant, and the maxim *res ipsa loquitur* has no application; that there is no evidence that the injury was caused by defective beading around the glass; that the plaintiff had daily opportunity to observe the conditon of the window, and that it was his duty to do so; that defendant was not bound to establish a system of independent inspection, and that consequently the evidence is not legally sufficient to go to the jury to entitle the plaintiff to recover.

The ruling of the trial Court in admitting incompetent evidence against the objection of the appellant is not reversible error when the appellant afterwards himself adduces evidence to the same effect.

Whether the duty to inspect the appliance with which work is to be done is imposed upon the master or upon the servant, depends upon the facts of each case, the nature of the employment and the rules or custom of the employer.

When a man is employed to open and shut the large plate glass windows in a building, the duty to inspect them and report if they are out of order is imposed upon him.

*Decided June 25th, 1908.*

Appeal from Baltimore City Court (SHARP, J.), where there was a judgment on verdict for the plaintiff for $2,000.

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke and Worthington, JJ.

*Wm. L. Marbury* and *Jesse Slingluff*, for the appellant.

*Thomas C. Weeks*, for the appellee.

Worthington, J., delivered the opinion of the Court.

This is a suit by an employee against his employer, to recover damages for an injury which the former sustained while engaged in the performance of his duties.

The defendant is a mercantile corporation carrying on business in the building at the northeast corner of Howard and Lexington streets in Baltimore City.

Plaintiff was, at the time of the accident complained of, employed by the defendant to make himself generally useful on the fourth floor of its place of business.

Some of his duties were to clean furniture, to help carry out furniture, and, more to the point so far as this suit is concerned, to open in the morning and close in the evening, the windows of that floor. The plaintiff testified that he had performed this duty every day during the five or six months of his employment there. These windows were large, their dimensions being six by eight feet, each containing a single pane of heavy plate glass from about three-eighths to one-half an inch in thickness. The windows were opened and closed by means of fixed pivots, one at the top and one at the bottom of the window frame. There was also attached to the bottom of each window frame a device for controlling the window and holding it open or shut, or at any angle desired. It is not deemed necessary for the purposes of this case to minutely describe this device, as there is no contention that it was not in good condition.

On the afternoon of June 4th, 1906, the plaintiff had just closed one of these windows, when in an instant a great many fragments of broken glass from the pane in that window fell upon the backs of his hands, cutting and injuring him severely.

. The manner in which the accident happened is briefly described by the plaintiff as follows: .

Q. Will you describe to the jury how you closed that window?

A. It works on a pivot in the middle, and you had to push; the window closed very readily. I had the window closed and my left hand was resting on the sill and I was in the act of pulling down the blinds with the right hand and like a flash, I should judge about one thousand pieces came out and struck me here (indicating the backs of his hands).

Q. Did the glass fall outward or inward?

A. Some fell outward and some fell inward.

This was all the evidence offered by the plaintiff as to the manner in which the accident happened, and as he was, at the time of the accident, hidden from view by some furniture in the room, no one but himself saw how it happened, though another employee of the defendant, a Mr. Gregg, a floor walker, who had charge of the room, testified that he could see the top of the window at the time it was closed; that the window closed rapidly, *with a bang*, and then he heard a terrible smash of glass. He said he examined the window immediately after the accident and found the window glass broken out with the exception of some large pieces adhering to the beading around the edge. He also testified that as far as he could see the strips or beads which held the glass in the window sash, were in perfect condition.

The defendant proved very satisfactorily that the window in question had been properly constructed, and the plantiff does not, on his part, seriously contend that the window was not so constructed in the first place, but does contend that *it was not maintained* in a reasonably safe condition and that therefore, for its alleged failure so to maintain this window, the defendant is chargeable with negligence. In what respect it was not maintained in a safe condition was not shown, and no evidence, except the fact of the breaking of the window under the circumstances above narrated, was adduced to prove any defect therein, unless the testimony of Mrs. Harman, plaintiff's wife, to the effect that a few days after the accident

she was standing on the street and saw Mr. Kauffman, the glazier, putting new strips around the window; and the testimony of two other witnesses to the effect that when they examined the window some time after the accident, they found the strips had been changed since the original construction, might be so considered.

The evidence of Mrs. Harman as to what occurred several days after the accident does not prove or fairly tend to prove any defect in the window at the time the accident happened.

These strips or beads, to which she referred, were used to secure the glass in the sash after it had been set in the rabbet, and were fastened to the sash from the outside. Possibly the old strips were broken or injured in removing the fragments of glass that adhered to the sides of the sash after the accident happened. Possibly they were broken while being removed, preparatory to putting in a new glass.

When the question at issue is the liability of defendant for the alleged faulty construction or improper maintenance of an appliance, evidence of events transpiring after the happening of the accident is usually inadmissible. *Columbia* v. *Hawthorne*, 144 U. S. 405; *Ziehm* v. *Electric Light, etc., Co.,* 104 Md. 48.

We think therefore that as this evidence was objected to, it should have been excluded, but as the defendant upon cross-examination, elicited evidence to the same effect, the ruling of the trial Court in this regard furnishes no reversible error. *Leffler* v. *Allard,* 18 Md. 545.

In the view that we take of the case, however, we do not consider this evidence important.

The defendant showed that the windows in the building had been in the first instance properly constructed by a competent builder; that such construction was a safe one; that the glass was good plate glass of glazing quality, and that the beading used to hold the glass in the sash was of the usual size and sufficient to make a good construction.

Mr. Grim, a carpenter employed by the defendant, testified that he boarded up the opening the afternoon after the glass

was broken out, and that the beads that held the glass in the window were in proper condition, no part of them being moved out of the way.

Mr. Gregg, floor walker for defendant testified, that he went to the window immediately after the accident and found the window glass broken out with the exception of some large pieces adhering to the beading around the edge, and that as far as he could see the beading seemed to be in perfect condition, he did not see where any of it was gone.

Mr. Kaufman, the glazier, who put the glass in the sash when the building was originally constructed eight or nine years before, testified that he put a new glass in the window after the accident and that when he went there for that purpose he found the beads and everything all right, except that the glass was gone. This witness also testified that the beading originally put on the window to hold in the glass was five-eighths of an inch and that when he went there to put in the new glass he found the beading to be seven-eighths of an inch.

The witness, Morrow, also testified that the beading which held the glass in place was five-eighths by three quarters. On cross-examination this witness stated that the beading at the time of the trial was larger than that orignally used for the purpose of securing the glass. When the larger beading was put on the window did not appear, except from the testimony of Mrs. Harman as above stated.

The only evidence in the case therefore to show that the window was in any respect defective on the day that the accident happened, is the inference to be drawn from the testimony that beading slightly different from that used in the original construction, was put in the window after the accident. This inference is rebutted by the direct testimony of two witnesses who examined the window immediately after the accident happened, and who stated that the beading was then in good condition.

But assuming that there was sufficient evidence of a defective beading at the time of the accident, to justify submitting that question to the jury, what evidence is there that such de-

fective beading caused or in any way contributed to the accident and injury?

How was the beading defective? How did such defect, if any, contribute to the accident? Even if we assume that some defect in the beading did in some unexplained manner contribute to the accident, still where is the evidence legally sufficient to show that the defendant did not use due and reasonable care to maintain the window in a safe condition?

In order to recover in this case it is incumbent on the plaintiff to show not only how the accident happened, but also that the defendant was remiss in respect to some matter which caused the accident. *Buswell Person. Inj.*, 111 A.

The master's liability, if any liability attaches at all, depends altogether upon a breach by him of some imposed duty.

Now the law imposes upon the master the duty toward his servant of exercising due and reasonable care to provide and maintain proper and safe materials and appliances with which the servant may perform his work, but a master is not an insurer of his servant's safety. *Wood* v. *Heiges*, 83 Md. 269.

When the servant engages to perform certain services for compensation, it is implied as part of the contract that as between himself and his employer, he assumes all the risks incident to the service.

In the absence of any rule or custom of the employer to inspect and test appliances with which his employees perform their respective services, and in the absence of any rule of law requiring him to do so, the employees themselves are expected to exercise circumspection for their own safety.

As stated in *Buswell on Per. Inj.*, sec. 204, "The principle is that where a servant has as good opportunity as the master to ascertain and avoid the danger himself, he will have no recourse against the master in case he is injured thereby, and he accepts the employment upon this implied condition." Upon this principle the case of *McGorty* v. *Southern, etc., Tel. Co.*, 69 Conn. 635, was decided. In that case the plaintiff, who was employed as a lineman by defendant, climbed an old pole for the purpose of removing the wires and cross arms there-

from, and while thus engaged the pole fell, by reason of its being rotten at the base, and the plaintiff, falling with it, received serious injuries.

It was not shown that there was any rule or practice of the defendant to inspect and secure poles before linemen were sent to work upon them, and the Court in disposing of the case, said, "Whether it is incumbent upon the master or upon the servant to perform such a duty, is usually a question of fact depending upon the terms of the contract of employment; the servant's knowledge of the hazards of the work in which he is engaged, his ability and opportunity to discover dangers to which he is exposed, and to avoid them, and upon other circumstances."

And it was determined under the circumstances of that case, "that each lineman should look out for his own safety in climbing poles," and that the master was not guilty of negligence, for failure to provide a system of independent inspection.

The same principle was also applied in the case of *Piper* v. *Cambria Iron Co.*, 78 Md. 249, where this Court said, "While employers should be held to a strict performance of duty toward their employees, yet the latter must be required to exercise some prudence, and to use the necessary means supplied to them to enable them to do their work in a safe and expeditious manner."

In the present case there is no pretense that the defendant had established any rule or custom of independent inspection of the windows in the building, and as the window in question was of simple design, and the plaintiff had ample opportunity to examine its condition, from day to day for several months before the accident happened, no system of independent inspection would seem to have been necessary. The plaintiff was a man about 50 years of age, and there was nothing to show that he was not possessed of ordinary intelligence and capacity.

It was, therefore, incumbent upon him to observe the condition of the windows from time to time for his own protection as well as that of the defendant.

In fact Mr. Gregg, the floor walker, testified that it was the plaintiff's duty to report to him if any of the windows on that floor were out of order, and while the plaintiff denied this when examined in rebuttal, yet we think that under the circumstances of this case, this duty was imposed upon him by the very nature and character of his employment.

As stated by MR. JUSTICE FIELD in *Northern Pac. R. R. Co.* v. *Herbert*, 116 U. S. 642, "If the servant failed to exercise that prudence, care and caution, which prudent men under similar circumstances would ordinarily exercise and thereby contributed proximately to the injury he was not entitled to recover."

In *Toledo, etc., R. R. Co.* v. *Eddy*, 72 Ill. 138, where an employee was injured by a fall from a ladder of which he had been for sometime in constant use, the fall having been caused by reason of some defect in the ladder, it was held that it was the duty of the employee himself to see and to know that the ladder was in repair, and if not to report the fact to the proper person for repair; that it was negligence on his part not to do so, and that the company was not liable.

Thus far we have proceeded upon the assumption that the plaintiff had proven, or given evidence tending to prove, some defect in the window, which caused or which directly contributed to the accident and injury complained of, while in fact no such evidence has been offered.

The plaintiff contends, however, that the mere fact of the falling of the glass is itself evidence of such defect, and also of the defendant's negligence in not maintaining the window in good repair; in other words that the doctrine of *res ipsa loquitur* is applicable to this case; and in this contention he is sustained by the ruling of the trial Court in granting his first prayer.

But before this doctrine can be applied the efficient cause of the accident must be shown by the testimony. Evidence of some defect, by reason of which the accident happened, must be adduced. Ordinarily it is necessary to show how the accident happened, and then to prove negligence on the part of

the defendant in respect to some matter which caused the accident, and the mere fact that an accident happened which caused the injury is not of itself generally sufficient to authorize an inference of negligence.    *Buswell Personal Inj.*, 111A.

Until it is known what occasioned an injury it cannot be said that the defendant was guilty of some negligence that produced the injury.    *Benedict* v. *Potts*, 88 Md. 56.

To mulct a defendant in damages without proving what caused the accident, is to punish it, not for any wrong it has done, or for any duty it has omitted, but because we cannot prove what we wish to find out.    *South Balto. Car Works* v. *Schaefer*, 96 Md. 105.

To test the soundness of plaintiff's contention, let us suppose that the whole pane had fallen out, unbroken, and had struck and injured the plaintiff on the first day of his employment.    The reasonable inference is that such an accident could only have happened from some defect in the window, and the mere fact of its falling whole and entire from the sash, would be evidence of such defect, and in the absence of satisfactory explanation by the defendant, it would speak against him as to the exercise of due care on his part.    In such a case the rule would be applicable, because it could be fairly and reasonably inferred from the circumstances themselves that negligence on the part of the defendant in properly constructing or in properly maintaining the window caused the accident.    But in this case the glass was broken into a "a thousand pieces," to use the expression of the plaintiff, before it fell, and such breaking may have been caused by its being struck with a piece of furniture, in moving it, during the day, or by the force of the wind, or, as seems most likely, by its being shut with too great violence by the plaintiff himself.    If it occurred under any of these circumstances the defendant would not be liable, because the plaintiff was in charge of the window and had opened and shut it daily for five or six months in absolute safety, and if there were defects in the window and he failed to discover them, or if he broke the window by shutting

it too violently, in either event his own negligence was the cause of the injury, and he could not recover.

It has been held in a number of cases that the sudden breaking of machinery is not of itself sufficient to warrant the Court in sending the case to the jury. *South Balto. Car Works* v. *Shaefer*, 96 Md. 105.

As was said by this Court in the case of *Benedick* v. *Potts*, 88 Md. 54, "The negligence alleged and the injury sued for must bear the relation of cause and effect. The concurrence of both and the *nexus* between them must exist to constitute a cause of action."

The negligence alleged and chiefly relied on in this case, is that, "the defendant failed to maintain said window in such condition that it could be safely used," and the only evidence of any such defect is the inference to be derived from the testimony, that after the accident happened new beading was used to hold the window in place, but there is no evidence whatever that any defect, if any existed, caused the accident complained of; or that there was any connection between such alleged defect and the injury.

In *Shaefer's case*, *supra*, this Court, quoting from *Stringham* v. *Hilton*, 111 N. Y. 197, said: "The same machine was continued in use for several years. When used with ordinary care there was no reason to suppose that harm or mischief would result  This fact brings the case directly within the rule, that when an appliance or machine not obviously dangerous, has been in daily use for a long time, and has uniformly proved adequate and safe, its use may be continued without imputation of negligence."

We think this language is applicable to this case. The doctrine *res ipsa loquitur* does not apply; at least not against the defendant.

It follows from what we have said that there was error in granting the plaintiff's first prayer, and as we do not think the plaintiff is entitled to recover, the judgment appealed from will be reversed without a new trial.

*Judgment reversed with costs.*