SMITH ET AL. *v.* BERNFELD, ETC.

[No. 5, September Term, 1961.]

402

■

*Decided October 11, 1961.*

The case was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and SYBERT, JJ.

*Earl Pryor* for the appellants.

*Jacob S. Levin* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiff wife, Margaret L. Smith, and her husband, Albert H. Smith, brought this suit against Jules Bernfeld, the defendant, a beauty parlor operator, for injuries sustained by Mrs. Smith while she was a customer at one of the defendant's beauty parlors and by her husband for medical expenses incurred by him as a result thereof. The jury returned verdicts for both plaintiffs. The trial court entered judgment *n.o.v.* for the defendant, and both plaintiffs appeal. (Where "the plaintiff" (singular) is spoken of below, the reference is to Mrs. Smith.)

The declaration alleged that the plaintiff was a customer at the defendant's beauty parlor, that she was awaiting service in a beauty salon chair provided for customers, that she "leaned forward to place her pocketbook on a counter directly in front of such chair and that such chair tilted forward causing plaintiff to fall upon the floor and the chair to fall upon her" and that the fall was due to the negligence of the defendant in failing to have the chair properly and firmly attached to the floor or in failing to provide a chair of sufficient balanced weight to withstand the weight of a customer sitting in the chair and "leaning forward under such circumstances." The plaintiff's testimony at the trial as to the chair toppling over is in general accord with the above allegations, but is further to the effect that as she sat in the chair with her heels hooked behind a tubular bar serving as a footrest at the front of the chair and that as she started to settle back with her arms on the chair arms and her feet on the footrest, the chair tipped over, threw her on one side and fell on her. She also testified that two employees of the defendant had stated after the accident that the chairs tipped over easily, that several other people had nearly fallen out of them, and that it was customary for each of these employees to stand behind his or her chair when a customer was getting in or out. At the trial only one of these employees testified. He then ascribed

his custom largely to the tendency of children who got in his chair to climb over it at all angles. (Though the plaintiffs had called him, they asked and were permitted to cross-examine him as a hostile witness.)

The plaintiffs' case in the trial court was pitched upon the defendant's negligence in failing to bolt the chair in question to the floor or to furnish a chair of sufficient balanced weight as not to tip over. No claim was stated as to any failure of any of the defendant's employees to steady the chair while the plaintiff was getting into it or upon any duty to warn and failure to warn her of danger; nor was any instruction along those lines given or, so far as appears, requested. The alleged statements of employees were apparently offered to show that the chair was of defective construction and to bring home knowledge thereof to the defendant through the knowledge of these employees. In this Court the appellants seek to lay much emphasis on the doctrine of *res ipsa loquitur,* but no contention based thereon, so far as the record discloses, was made in the trial court.

Neither the chair involved in the accident nor a chair of the same type was produced in court, but it was described to some extent and its construction was made clearer by a sketch in a catalogue. It has four legs of tubular metal shaped more or less like spider legs which come together at a collar or hub roughly under the middle of the seat. Through this collar passes a treaded spindle, to which the seat is attached. By turning the seat on the spindle the chair can be raised or lowered through a range of about ten inches. A pin in the spindle limits the height to which the chair can be raised. Attached to the seat is a back, with arms coming forward from it. Also attached to the chair below its front edge and protruding perhaps six inches (exactly how much is not stated) is a tubular footrest. The chair had been raised to some unstated extent for the first phase of the plaintiff's treatment, she had left it temporarily and had returned for further attention.

There was uncontradicted evidence on behalf of the defendant to show that the chair in question was of a standard type used in beauty parlors, that it was made by a large and es-

tablished manufacturer of such equipment and sold on a nationwide basis, and that the defendant had used chairs of the same or essentially similar design for fifteen years in his beauty parlors in serving more than 20,000 customers, none of whom, other than the plaintiff, had ever fallen out of one, and that a sales representative of the manufacturer who had been in the business for twenty-seven years had never known of anyone else falling out of one. This witness also testified, without contradiction, that chairs of similar design were installed in 95% of the beauty parlors designed and equipped by his company, and were made by the largest manufacturer of equipment in this particular field.

The general rule by which the sufficiency of the evidence is to be tested when this Court is reviewing a motion for a directed verdict or judgment *n.o.v.* for the defendant is well established as being that this Court must resolve all conflicts in the evidence in favor of the plaintiff and must assume the truth of all evidence and inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right to recover — that is, the evidence must be viewed in the light most favorable to the plaintiff. *Campbell v. Jenifer,* 222 Md. 106, 110, 159 A. 2d 353; *Zeamer v. Reeves,* 225 Md. 526, 530, 171 A. 2d 488. A difficulty may arise in a case such as this where the defendant offers evidence to show some fact or facts by way of defense. Such evidence, where the facts are conceded or are undisputed, may be considered in reviewing a ruling on a motion for a directed verdict or in entering judgment *n.o.v.,* but may not be so considered if the evidence is merely uncontradicted, if its truth is controverted. *Alexander v. Tingle,* 181 Md. 464, 30 A. 2d 737. The rule of this case, as well as the practical difficulty of applying the distinction therein stated, were recognized by Judge Markell, speaking for the Court in *Dunstan v. Bethlehem Steel Co.,* 187 Md. 571, 577-578, 51 A. 2d 288. See also *Mario Anello & Sons, Inc. v. Dunn,* 217 Md. 177, 181, 141 A. 2d 731, which, as did the *Dunstan* case, arose under the Workmen's Compensation Law.

In the present case it is our view that the affirmative testimony on behalf of the defendant above summarized with

regard to the manufacture and the wide distribution and use of chairs of the type here involved and of the absence of accidents to others from their use is essentially uncontroverted within the rule of *Alexander v. Tingle, supra,* and may, therefore, be considerd here, as was evidence of the sound construction and of inspection of the stool involved in *Williams v. McCrory Stores Corp.,* 203 Md. 598, 102 A. 2d 253. We do not understand that the plaintiffs actually contend that it may not be considered here. It is true that the plaintiff testified that the chair was "very unusual," but her explanation of this statement was that she had never seen one like it in any other beauty salon that she had been in. Her characterization of the chair seems to have been merely an expression of her personal opinion and she was not qualified as an expert in the field.

Since the plaintiff was a business invitee, a customer of the defendant, the latter owed her a duty to see that his premises and equipment intended for her use were reasonably safe and to warn her of any dangerous condition known, or which reasonably ought to have been known, to him, but not to the customer. *Williams v. McCrory Stores, Corp., supra,* 203 Md. at 604; *Evans v. Hot Shoppes, Inc.,* 223 Md. 235, 239-241, 164 A. 2d 273, and cases therein cited. These cases make it clear that the proprietor is not an insurer of the safety of his patrons. In the latter case Judge Prescott fully reviewed the general rule as stated above and in the Restatement, *Torts,* Sec. 343, and in Maryland cases which have involved that rule. He cited quite fully *Glaze v. Benson,* 205 Md. 26, 106 A. 2d 124, and *Morrison v. Suburban Trust Co.,* 213 Md. 64, 130 A. 2d 915; and all of them are pertinent here notwithstanding that neither *Evans, Glaze,* nor *Morrison* dealt with chairs.

*Williams v. McCrory Stores Corp., supra,* did deal with a stool at a lunch counter and it cited a number of chair cases. Among them were *Herries v. Bond Stores,* 231 Mo. App. 1053, 84 S. W. 2d 153, and *Gow v. Multnomah Hotel,* 191 Or. 45, 224 P. 2d 552, each of which involved a collapsing chair and *Schueler v. Good Friend North Carolina Corp.,* 231 N. C. 416, 57 S. E. 2d 324, 21 A.L.R. 2d 417, where a customer in a store sat on one of a row of chairs and the

whole row toppled over backwards. In that case, there was evidence to show that the whole row was likely to tip over unless it was bolted to the floor. It had previously been so attached, but was not at the time of the accident. The doctrine of *res ipsa loquitur* was applied in that case, but in view of the evidence of specific negligence, we should not regard it as controlling if the case had arisen under the law of this State.

It is obvious and it was admitted that the chair in question could be tipped over and that it might be tipped over by someone standing on the footrest bar. These facts, we think, are not sufficient to show faulty construction of the chair. If they were, almost any movable chair would be inherently dangerous; and as a matter of common experience that simply is not so.

This leaves for consideration the plaintiffs' alternative ground of alleged negligence—that the chair should have been bolted to the floor. Much the same may be said of this as of the closely related contention that the chair was of faulty construction. It must be borne in mind that the plaintiffs have the burden of showing negligence. It is doubtless true that as the chair seat is raised, the center of gravity is raised and the stability of the chair is thereby reduced. There is, however, no evidence to show at what, if any, point of elevation reasonable stability of the chair is lost; and the fact that the chair seat could be raised about ten inches (it is not even shown how much it actually was raised) is not of itself enough to show that the chair would become unstable. The situation is quite different from that in the *Schueler* case, where the chair was unstable because of its construction in that the seat overhung the legs. Even the reported statements of employees of the defendant made to the plaintiff just after the accident do not show that any chair of this type had tipped over—only that they might be tipped over, which, of course, is true of almost any chair. Their statements, indeed, indicated that none had tipped over.

We have here a case in which the defendant used equipment of a type standard in the trade all over the country. While proof that a businessman follows the standards in his trade

is not conclusive of due care, it is very strong evidence thereof. See *Stottlemeyer v. Groh,* 201 Md. 414, 94 A. 2d 449; *Long v. Joestlein,* 193 Md. 211, 216-217, 66 A. 2d 407; *Smith v. Marks Isaacs Co.,* 147 So. 118 (La. App., 1933); II Harper & James, *The Law of Torts,* § 17.3; Morris, *Custom and Negligence,* 42 Colum. L. Rev. 1147 (1942). As Morris points out, "[i]t puts teeth in the requirement that the plaintiff establish negligence." 42 Colum. L. Rev. at 1148.

Of course the owner or user of property has a duty to a business visitor to provide reasonably safe premises within the scope of the invitation. However, no business man is required to provide an appliance or place of business free from the hazard of all mishaps. This is a task impossible to fulfill. When a business man uses a customary appliance, as in this case, negligence merely from his using that appliance is not lightly to be imputed, for the custom goes a long way to show that it is reasonably prudent to use it. A proprietor cannot be held for mishaps resulting from conditions obvious to any customer. As is said in II Harper & James, op. cit., § 27.13, pp. 1489-1490:

> "People can hurt themselves on almost any condition of the premises. That is certainly true of an ordinary flight of stairs. But it takes more than this to make a condition *unreasonably* dangerous. If people who are likely to encounter a condition may be expected to take perfectly good care of themselves without further precautions, then the condition is not unreasonably dangerous because the likelihood of harm is slight."

The very absence of any claim on the part of the appellants either in their declaration or in their brief in this Court of any breach of duty on the part of the defendant because of the fact that none of his employees steadied the chair while the plaintiff wife was getting in it or settling herself in it, or because no warning of danger was given her, is, we think, not without significance as to the absence of any actual known danger. This view is strengthened by the appellants' attempt to rely in this Court on *res ipsa loquitur,* which was not even an issue in the trial court.

If we assume that the facts that this specific issue was not presented in the trial court and that the plaintiffs took no exceptions to the charge would not prevent its consideration in this Court under Maryland Rules 885 and 554 e, we think that the plaintiffs' attempt to establish specific grounds of alleged negligence precludes recourse to the doctrine of *res ipsa loquitur*. *Smith v. Baltimore Transit Co.*, 214 Md. 560, 566, 136 A. 2d 386; *Maszczenski v. Myers*, 212 Md. 346, 352, 129 A. 2d 109; *Coastal Tank Lines v. Carroll*, 205 Md. 137, 145, 106 A. 2d 98; *Hickory Transfer Co. v. Nezbed*, 202 Md. 253, 262-263, 96 A. 2d 241; *Strasburger v. Vogel*, 103 Md. 85, 63 A. 202. We accordingly hold that the doctrine of *res ipsa loquitur* is not available to the plaintiffs here.

Even if it were, it could do no more than serve as an argument in support of their claims of specific negligence. Their proof in support thereof was, as we have said, insufficient to warrant submission of the case to the jury. *Williams v. McCrory Stores Corp.; Evans v. Hot Shoppes, Inc.;* both cited above. Accordingly, we think the trial court was correct in granting the defendant's motion for judgment *n.o.v.*

*Judgment affirmed; costs to be paid by the appellants.*