## NALEE, INC., Etc. *v.* JACOBS

[No. 242, September Term, 1961.]

526

*Decided May 8, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HORNEY, MARBURY and SYBERT, JJ.

*William W. Cahill, Jr.,* with whom were *Weinberg & Green*
on the brief, for the appellant.

*Albert H. Frankel,* with whom were *Marvin L. Frankel*
and *Philip S. Marano* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiff-appellee, Jacobs, sued the defendant-appellant,
Nalee, Inc., (Nalee) trading as the Pimlico Hotel, to recover
for injuries sustained when a bench in the defendant's hotel
tipped over and struck and injured the plaintiff's right foot.
At the end of the plaintiff's case defendant elected not to ad-
duce any evidence, the trial judge denied its motions for a
directed verdict, and the jury returned a verdict of $3,500 for
the plaintiff. Nalee's motion for judgment *n.o.v.* was denied
and Nalee appeals from the judgment entered on the verdict
of the jury. The charge to the jury included an instruction
that the plaintiff was free from contributory negligence as a
matter of law, and there is no appeal on that score. The only
issue is whether there was sufficient evidence of primary neg-

ligence for the case to go to the jury. In passing on this question on the defendant's motion for a judgment *n.o.v.*, the trial court held that the evidence was sufficient either with or without reliance upon the "doctrine" of *res ipsa loquitur*. The defendant contends at the outset that the plaintiff is not entitled to rely upon *res ipsa loquitur* (a) because he did not do so at the trial and (b) because he tried unsuccessfully to prove grounds of alleged specific negligence. The defendant further contends that even if *res ipsa loquitur* were available to the plaintiff, the facts do not support its invocation and that they do not support any inference of negligence on the part of the defendant. We think that the determination of this last contention is decisive of the case.

The plaintiff was a member of a group which met once a month at the hotel for cocktails, dinner and conversation. Usually they met in a room on the first floor known as the Preakness Room, but on the night of the accident, December 14, 1958, they gathered in another room on the second floor. Shortly after his arrival, the plaintiff became engaged in conversation with three other men. He and one of the others were standing directly in front of a bench located along one wall; the other two were seated on the bench. This bench was about twelve to fifteen feet long and was generally described as the type one would ordinarily find in a "club basement." It was constructed in two pieces: first, a heavy wooden frame with a rectangular base and an upholstered back, and, second, an upholstered seat which fitted on the base. It was not fastened to the floor or wall in any fashion. During the course of the conversation one or both of the two men on the bench either moved or leaned forward or otherwise shifted their weight while seated, and the bench tipped forward. As it tipped, the upholstered seat portion of it slipped off the frame and landed on the instep of appellee's right foot. During this occurrence the two men who had been sitting on the bench remained more or less in their sitting positions as the bench tipped forward. After the seat hit the floor and the appellee's foot, they raised or straightened themselves up, tipping the frame of the bench back into an upright position, leaving the upholstered seat portion on the floor.

The testimony shows that the bench appeared to be and was in fact quite heavy. All the witnesses who described it agreed that it was either "substantial looking", "heavy," or "very heavy." The appellee testified that it was a "substantial looking piece of furniture," that he saw "absolutely" nothing wrong with it, and that it presented a "solid picture," indicating that, before the accident, its appearance was that it either was all one piece or that the upholstered seat was attached to the frame. A waiter who was present at the time of the accident testified that "the frame and back was [sic] all one piece, and it was very heavy." He said further: "No one could possibly pick * * * [it] up by themselves [sic]. You couldn't move it. It didn't move." He also testified that the bench appeared to be all one piece when one looked at it. Shortly after the accident, this witness carried the upholstered seat out of the room by himself, but the frame part later had to be carried out by three men. That evening, or the next morning, the bench was seen in the hotel's parking lot, and it was taken away sometime thereafter. Neither the bench itself nor a picture of it was produced at the trial.

The bench had originally been used in the Preakness Room, but in a part of that room which had been used only once by the plaintiff's group. About three weeks prior to the accident, it had been moved to the second floor during redecoration of the Preakness Room. The bench had been in a position along a wall in the Preakness Room as part of a booth. Next to it was a rounded, similar bench, fitting into a corner. The waiter testified that these two benches were not attached together. His testimony, which was the only testimony on the subject, was not clear as to whether the bench that tipped over was "built and fitted into" the wall when it was in the Preakness Room. He first said that it had not been, but later said that, although he didn't "believe so," "it could have been" fitted into the wall behind a moulding that ran along the walls of the Preakness Room. There was no evidence that it had been tipped while in the Preakness Room, nor was there any that it had not.

The seat that slid off the bench was so upholstered that along its front edge it was considerably higher than along the

rear edge. The thickness of the upholstery at the front was stated to have been about 12 inches; the thickness at the rear about 6 inches. It is said to have sloped back at an angle of 45 degrees. It seems a reasonable inference that if occupants of the bench put their weight on the forward edge, this would tend to cause the whole bench to tilt and to slide the seat off the base if the seat were not securely fastened. It seems to be conceded and certainly is evident from the testimony that it was not fastened at all.

Since the plaintiff and other members of his group were business invitees of the defendant, the latter owed them a duty to see that the premises and equipment intended for their use were reasonably safe and to warn them of any dangerous condition known, or which reasonably ought to have been known, to the defendant, but not to his patrons. *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 146 A. 282; *Moore v. American Stores Co.,* 169 Md. 541, 182 A. 436; *Williams v. McCrory Stores,* 203 Md. 598, 604, 102 A. 2d 253; *Evans v. Hot Shoppes, Inc.,* 223 Md. 235, 239-41, 164 A. 2d 273; *Smith v. Bernfeld,* 226 Md. 400, 406, 174 A. 2d 53. This case differs from *Williams v. McCrory Stores* and *Smith v. Bernfeld,* just cited, in that it was the use of the bench by some of his fellow business invitees and not by the plaintiff himself which was the immediate occasion of his injury. Such use was, however, well within the contemplation of the defendant and (apart from any question of "exclusive control" of the defendant under *res ipsa loquitur*) this difference seems without legal significance as to the defendant's responsibility to the plaintiff.

The defendant-appellant relies very heavily on *Smith v. Bernfeld, supra.* In that case the plaintiff, a patron of a beauty parlor, sought to recover damages from the proprietor for injuries sustained by her when a chair which she was using tipped over. At the trial she sought to establish negligence on the part of the defendant on the ground that he should either have bolted the chair to the floor or else should have furnished a chair of such balanced weight that it would not tip over. The plaintiff's evidence showed that she leaned forward in the chair

with her heels hooked over a footrest bar when the chair tipped over. This evidence, and uncontroverted evidence adduced by the defendant to show that the chair was of a standard design in wide use, without similar accidents, were held sufficient to support the entry of a judgment *n.o.v.* for the defendant.

That case is distinguishable from the present. There it was pointed out that it was obvious (to the customer or to anyone else) that the chair in question could be tipped over and that it might be tipped over by someone standing on the footrest bar, but we thought this was insufficient to show faulty construction of the chair. Here the appearance of the bench was one of heaviness and, we gather, of stability. There was no visible reason, so far as the record discloses, for the plaintiff or the occupants of the bench to suppose that if two people sat on the forward edge of the seat, the bench would tilt or the seat would slide off. Furthermore, in *Smith v. Bernfeld, supra,* the defendant offered the affirmative and uncontroverted testimony (above referred to) to show the general safe use of similar chairs. Here the defendant offered no testimony whatever, and there is no evidence to show that the bench was so constructed as to be stable or to show that it had been used for a long time without mishap. (It is not even clear that it had been used in the same way in the Preakness Room—that is, without being in some way secured.) There were, on the other hand, the simple facts that the bench was furnished by and was under the control of the defendant, that it was placed where it was and as it was for the use of the defendant's patrons, that it was used for a perfectly expectable use and in a perfectly expectable way, that it tipped and that its seat slipped off under normal, expectable use, and that injury thereby resulted to the plaintiff. We think this evidence was sufficient to support a finding, based upon reasonable inference, of a breach of the defendant's duty to the plaintiff to furnish reasonably safe equipment and to make proper inspections to ascertain its condition and to discover and correct defects therein. Substantially, this is what the declaration alleged.

We think that the case was properly submitted to the jury and that judgment on its verdict was properly entered for the

plaintiff. That negligence can be inferred from circumstantial evidence is settled by a number of cases in this Court. *Pennsylvania R. Co. v. Bell Concrete Construction Co., Inc.,* 153 Md. 19, 22, 137 A. 503; *Grzboski v. Bernheimer-Leader Stores,* 156 Md. 146, 148, 143 A. 706; *Dickey v. Hochschild, Kohn & Co., supra,* 157 Md., at 453; *Singer Transfer Co., Inc. v. Buck Glass Co.,* 169 Md. 358, 181 A. 672; *Ambassador Apt. Corp. v. McCauley,* 182 Md. 275, 34 A. 2d 333. See also *Benedick v. Potts,* 88 Md. 52, 55, 40 A. 1067; and *Rawls v. Hochschild, Kohn & Co.,* 207 Md. 113, 119, 113 A. 2d 405; in each of which the rule was stated, but was found not applicable.

The close resemblance or relationship which may exist between what may be classified as *res ipsa loquitur* cases and cases in which a direct inference of the defendant's negligence may be drawn from particular facts, has been pointed out more than once. See, for example, Judge Offutt's statement in the *Singer Transfer* case, *supra,* in which he said (169 Md., at 362):

> "[W]here damage * * * is caused by some instrumentality within the exclusive control of the defendant, under circumstances which justify the inference that it would not have occurred had the defendant exercised ordinary care, negligence may be presumed as a rational inference from those facts. [Citing authorities, including eight decisions of this Court.] Whether that presumption falls under the classification of the doctrine of *res ipsa loquitur* or that of the effect of circumstantial evidence is a mere matter of indexing; but the principle itself is firmly established, that where the known facts justify a rational inference of defendant's negligence, such negligence may be presumed."

See also the dissenting opinion of Bond, C. J. in *Potomac Edison Co. v. Johnson,* 160 Md. 33, at 40-41, 152 A. 633.

In view of our conclusion that negligence of the defendant may be inferred directly from the facts of this case, it is unnecessary to decide the interesting questions relating to *res*

*ipsa loquitur* which have been raised and ably presented by the appellant. However, because of a possible misconception to which a part of the opinion in *Smith v. Bernfeld, supra,* may give rise (that opinion having been written by the writer of this opinion), it seems desirable to point out a limitation upon the scope of that opinion. In that case all of the facts with regard to the actual happening of the accident had been developed, and when developed, they were held insufficient to establish negligence on the part of the defendant. It was in that context that we said (assuming the question of *res ipsa loquitur* to have been properly reserved for review) that "the plaintiffs' attempt to establish specific grounds of alleged negligence precludes recourse to the doctrine of *res ipsa loquitur."* (226 Md. at 409.) Each of the cases cited in support of this statement (*Smith v. Baltimore Transit Co.,* 214 Md. 560, 566, 136 A. 2d 386; *Maszczenski v. Myers,* 212 Md. 346, 352, 129 A. 2d 109; *Coastal Tank Lines v. Carroll,* 205 Md. 137, 145, 106 A. 2d 98; *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 262-63, 96 A. 2d 241; *Strasburger v. Vogel,* 103 Md. 85, 63 A. 202), was a case in which the facts had been similarly disclosed; and the plaintiff's difficulty was that the evidence did not stop at the point of showing the happening of the accident under circumstances in which negligence of the defendant was a permissible inference under the doctrine of *res ipsa loquitur,* but went further and showed how the accident happened and so removed the basis for invoking the doctrine. In all of the cases cited in *Smith v. Bernfeld, supra,* except the *Coastal Tank Lines* case, the evidence as to how the accident happened came from witnesses called by the plaintiff, but the *Coastal Tank Lines* case makes it clear that the rule is not limited to such cases.

On the facts of *Smith v. Bernfeld, supra,* there was no occasion to extend the rule further than the holdings of the cases cited; and to avoid possible misunderstanding, we now state that the quoted comment was not intended to and should not be treated as extending the rule of those cases. We adhere to the rule as stated by Judge Hammond in the *Coastal Tank Lines* case (205 Md. at 145) : "We think that 'the facts and the demands of justice' do not require that an inference be

permitted to be drawn as a matter of right where all of the circumstances of the occurrence are shown by the testimony." See 2 Harper & James, *Torts,* § 19.10, p. 1098, where the authors cite, *inter alia, Strasburger v. Vogel, supra,* and *Hickory Transfer Co. v. Nezbed, supra.* See also *Benedick v. Potts, supra.* Cf. *Lawson v. Clawson,* 177 Md. 333, 9 A. 2d 755, holding that allegations of specific negligence in the declaration did not bar reliance upon *res ipsa loquitur.*

We think that a factual inference of negligence on the part of the defendant could have properly been drawn by the jury from the evidence in this case without resort to the "doctrine" of *res ipsa loquitur,* and we affirm the judgment.

*Judgment affirmed, with costs.*