## SAFEWAY STORES, INC. *v.* BOLTON
### [No. 324, September Term, 1961.]

*Decided July 10, 1962.*

The cause was argued before HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Hal C. B. Clagett,* with whom were *Sasscer, Clagett & Powers* on the brief, for appellant.

*William E. Brooke,* with whom were *Shriver & Brooke,* on the brief, for appellees.

SYBERT, J., delivered the opinion of the Court.

The defendant in a personal injury suit complains in this appeal that the trial court erred in refusing to grant its motion for directed verdict or its motion for judgment *n.o.v.* made on the ground that no legally sufficient evidence of negligence on its part had been shown.

The appellee, Helen L. Bolton (plaintiff below) moved to dismiss the appeal for the reason that appellant, Safeway Stores, Inc. (defendant below) has allegedly failed to set forth in the record extract all matters necessary for the determination of the issue raised in the appeal, as required by Maryland Rule 828. We find that the extract does contain sufficient material to decide the case on its merits and the motion will be denied.

On a June afternoon in 1958 Mrs. Bolton was food shopping in a Safeway store in Laurel, Maryland. The front of the store had four glass windows, each approximately nine feet square. A wind and rain storm had come up and while Mrs. Bolton was standing near one of the check-out counters with her back to the windows a sudden gust of wind hit against the windows and one of them fell into the store. The shattering glass caused a severe cut in the back of Mrs. Bolton's leg. She sued for her resulting injuries, alleged to be permanent, and her husband sued for expenses and loss of services and consortium of his wife.

At the trial testimony as to what had occurred was given by the manager of the store and two of his employees, in addition to Mrs. Bolton. The manager, Paul E. Kutzner, called by the defendant, testified that each of the window-panes, including the one in question, fitted into a metal frame, with the glass held on the inside of the store by metal strips about three-eighths of an inch wide, secured by screws, at all four edges. In order to install a window-pane it was necessary to remove the metal strip on one side, slide the glass into place, and then screw the metal strip back on to hold it in place. The

glass was not sealed in any way, but was held solely by the metal strips. Mr. Kutzner further testified that he was about to enter the store with some carts he had been gathering when a "big gust suddenly hit the front of the store * * * and just as soon as I got inside the door I seen this window come and shatter." He said the gust blew a customer past him as he came in the door. He knew of nothing unusual about the window and noted that jagged pieces remained in the frame after the glass had broken. Another employee, Horace Oakes, also produced by the defendant, had not seen the glass at the moment of its breaking, but upon running to the front of the store noted that "a few pieces" were still hanging at the top of the frame, and also on the sides, which he helped to remove. He said all four sides of the frame were in place and "the frame looked all right to me", and stated that the same glass had been in the window during the whole seven years he had worked at the store. Matrice Hensley, the employee at the check-out counter where Mrs. Bolton was standing, was called by the plaintiffs and testified that the wind was blowing, that "I saw the window give" and that "It came right in". She further stated that in the course of her duties in putting up signs on the four front windows they would rattle a little and did not seem too tight. She testified that "you could feel the wind come through the windows when the wind was blowing". When asked on cross-examination whether she knew of any defects in the glass or frame she answered, "There was no defects in the window or the frame, no, not to my knowledge." The essence of Mrs. Bolton's testimony was that the check-out girl had shouted a warning at her and when she turned quickly she "saw this glass coming down on me".

At the close of all the testimony a motion by appellant for a directed verdict was granted as to Mr. Bolton but denied as to Mrs. Bolton. The jury returned a substantial verdict for Mrs. Bolton and after the court denied appellant's motion for judgment *n.o.v.* appellant noted an appeal from the judgment entered against it. Mr. Bolton did not appeal.

Appellant contends that appellee failed to prove that it was guilty of any primary negligence and also that appellee is

precluded from relying on the doctrine of *res ipsa loquitur* because she did not invoke the doctrine in the trial court but attempted affirmatively to prove specific negligence.

The general rule applicable in reviewing a defendant's motion for a directed verdict or for judgment *n.o.v.* is that we must consider all of the evidence, as well as all natural and reasonable inferences deducible therefrom, in the light most favorable to the plaintiff, and we have done so in this case. Nevertheless, we are forced to conclude that the evidence admits of no reasonable inference of negligence on the part of appellant.

It is well established that since appellee was a business invitee, the appellant owed her a duty to see that its premises were reasonably safe, and to warn her of any dangerous condition known, or which reasonably ought to have been known, to it, but not to the customer. *Smith v. Bernfeld,* 226 Md. 400, 406, 174 A. 2d 53 (1961). However, that case, and the cases there cited, make it clear that the proprietor is not an insurer of the safety of his patrons. Thus, before a customer may recover for injuries sustained on the premises of a storekeeper, he must produce legally sufficient evidence of some condition which constitutes an unreasonable risk to him as a patron, and he must also show a realization on the part of the business inviter of this condition, and the absence of any reason for the inviter to believe that the risk would be realized by the patron. See *Evans v. Hot Shoppes, Inc.* 223 Md. 235, 239-240, 164 A. 2d 273 (1960), and cases there cited.

The only relevant evidence produced on the part of the appellee was the testimony of the check-out girl, that when the wind blew she could feel wind come in around the windows, that they would rattle a little under the pressure of placing signs upon them, and that they did not seem too tight. Her testimony referred to all four of the large windows in the front of the store, and she did not at any time relate her observations particularly to the window in question. No evidence whatsoever was produced to show that the window which blew in differed in any manner from the three which remained intact, or that its glass or frame was in any way defective, and,

as noted above, the check-out girl herself admitted that she knew of no defect in either of them.

The rattling and the draft observed around the windows could be explained by the fact that the glass was not sealed, but was specifically designed to be held solely by a metal frame. Furthermore, the undisputed and uncontroverted testimony that pieces of the glass remained hanging along the top and sides of the frame after the accident would negate the possibility that the whole window had slipped out of the frame before shattering, thus precluding any inference that the frame was in some way defectively applied or maintained. It is significant that when new glass was installed after the accident the manager of the store noted that no part of the frame was replaced. On the basis of the testimony adduced by appellee, it seems obvious that had the manager inspected the window in question ten minutes before the accident he could not have discovered that it was likely to break.

We feel that the case of *Stewart & Co. v. Harman,* 108 Md. 446, 70 Atl. 333 (1908), also involving a shattering window, is in point here. The appellee attempts to distinguish the case by pointing out that the plaintiff there involved had actively participated in events leading up to the breaking of the glass, since it shattered when he closed the window. While the factual distinction is present, the principle upon which the case was decided is nevertheless applicable to the instant suit, *i.e.,* that the injured party was precluded from recovering because of his failure to show that the store owner was remiss in respect to some matter which caused the accident. In the *Stewart & Co.* case the only evidence offered to show a defect in the window was the fact that beading slightly different than that used in the original construction was put in the window after the accident. In commenting on this evidence this Court stated (at p. 451 of 108 Md.):

> "How was the beading defective? How did such defect, if any, contribute to the accident? Even if we assume that some defect in the beading did in some unexplained manner contribute to the accident, still

> where is the evidence legally sufficient to show that the defendant did not use due and reasonable care to maintain the window in a safe condition?"

Similar questions posed in the instant case must lead to the conclusion that the facts that the windows on the front of the store rattled under pressure and were drafty in windy weather are not sufficient to support a reasonable inference that a dangerous or unusual condition existed in the window in question, of which the appellant should have been aware. It is well established that a jury should consider only the evidence before it in deciding a particular question and should not be allowed merely to speculate; and where the evidence is not sufficient to support a jury's verdict on a particular question, that question should not be submitted to it. *Maszczenski v. Myers,* 212 Md. 346, 129 A. 2d 109 (1957); *Baer Brothers, Inc. v. Keller,* 208 Md. 556, 119 A. 2d 410 (1956). In the case at hand we do not think there was sufficient evidence of negligence on the part of the appellant, to rise above mere speculation. The conjectural nature of the evidence is manifested by the fact that it would be possible to draw an inference from it that the wind or some other unknown cause *beyond appellant's control* was the sole cause of the falling of the window. Cf. *Elmar Gardens, Inc. v. Odell,* 227 Md. 454, 177 A. 2d 263 (1962).

Appellee did not invoke the doctrine of *res ipsa loquitur* in the trial court. While she has not vigorously pressed the availability to her of the doctrine on appeal, she states that if the doctrine is applicable under the facts, there is nothing to prevent inferences established by law from arising. Even if we assume, as Chief Judge Brune did in the case of *Smith v. Bernfeld, supra,* that the doctrine could be considered by this Court on appeal although it had not been invoked below, nevertheless we think that appellee's attempt to establish specific grounds of alleged negligence went too far to permit recourse to the doctrine, in view of a series of cases decided by this Court, and cited in *Smith v. Bernfeld* (at p. 409 of 226 Md.). See also *Nalee, Inc. v. Jacobs,* 228 Md. 525, 180 A. 2d 677 (1962). Appellee herself concedes in her brief that

she "could have produced evidence that the window fell in, and stopped, or, proceed as she did in showing the observations made by an employee." We think that when she did elect to proceed she in effect produced all the circumstances surrounding the accident. As Judge Hammond stated for this Court in *Coastal Tank Lines v. Carroll,* 205 Md. 137, 145, 106 A. 2d 98 (1954), with respect to the availability of the doctrine of *res ipsa loquitur:*

> "We think that 'the facts and the demands of justice' do not require that an inference be permitted to be drawn as a matter of right where all of the circumstances of the occurrence are shown by the testimony. * * *"

We hold, therefore, that appellee cannot avail herself of the doctrine in this appeal.

For the reasons stated we think the trial court erred in denying the appellant's motion for a directed verdict, and its motion for judgment *n.o.v.,* and hence the judgment entered for the plaintiff must be reversed.

> *Motion to dismiss appeal denied; judgment reversed without a new trial, with costs.*