LLOYD *v.* BOWLES ET AL.

[No. 217, September Term, 1970.]

*Decided February 3, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Norman R. Lilly* for appellant.

*Edward P. Murphy,* with whom were *Matthew Swerdloff* and *Swerdloff, Albert & Lasover* on the brief, for William Bowles, one of appellees. *Thomas G. Andrew,* with whom were *Rollins, Smalkin, Weston & Andrew* on the brief, for Ruby Sokolowski, other appellee.

FINAN, J., delivered the opinion of the Court.

The action giving rise to this appeal was a suit filed by the appellant Velma Lloyd for injuries sustained by her while leaving a beauty parlor owned by the appellee Ruby Sokolowski which was being remodeled by appellee William Bowles. A jury verdict for $7500 was returned in Baltimore City Court in favor of the appellant. On March 12, 1970, Judge J. Harold Grady entered judgment n.o.v. in favor of both appellees. We must decide in this appeal whether that ruling was correct.

570

The facts behind the lawsuit are somewhat lengthy, but not involved. Before proceeding to a consideration of those facts, we note that in reviewing on appeal a defendant's motion for judgment n.o.v., the evidence and all reasonable inferences to be taken from that evidence must be reviewed in the light most favorable to the plaintiff. *I.O.A. Leasing Corp. v. Merle Thomas Corp.*, 260 Md. 243, 272 A. 2d 1 (1971) ; *Safeway Stores, Inc. v. Bolton*, 229 Md. 321, 326, 182 A. 2d 828 (1962). If the defendant introduces any evidence which is undisputed, that evidence may be considered on appeal; however, if the truth of the defendant's evidence is controverted in any way, even if not contradicted, then that evidence may not be considered. *Smith v. Bernfeld*, 226 Md. 400, 405, 174 A. 2d 53 (1961). Therefore, we set forth the facts which were before the jury in the light most favorable to the appellant.

Mrs. Lloyd was a long-time weekly customer at Mrs. Sokolowski's beauty parlor. The approach to the beauty parlor had for some time consisted of a ramp leading from the sidewalk, between two display windows, to the front door, which was recessed some fifteen feet from the building line. Within a week prior to the day of the accident, remodeling of the entrance had taken place. This remodeling, undertaken to enlarge the working area of the beauty parlor, had progressed to the point that the incline or ramp had been replaced with two concrete steps (consisting of two risers and one tread) leading to a new storm door which was almost flush with the front of the building. The doorsill of the new door was flush with the riser of the top step. The former outside door was now an interior door at the end of a hallway. This remodeling was being performed by appellee Bowles.

The appellant arrived for her appointment at approximately 4:00 P.M. on April 7, 1965, and entered the beauty parlor by way of the new steps. She was leaving the shop at approximately 6:00 P.M. when the accident occurred. She had finished her appointment, proceeded through the interior door which was propped open, opened the new

door by pulling it toward her (which placed her one or two feet from the top riser), and took one or two steps before coming to the top riser. Mrs. Lloyd testified that she was wearing her glasses at the time (she had had a cataract removal about six or seven years before, and could see almost nothing without them), that it was "pretty nearly dark" outside, that she looked down to see what was in front of her when she opened the door, but that the steps and sidewalk "blended together" and "looked all like sidewalk." She further stated that there was no lighting on the steps, that the only outside light came from across the street, and that a large canopy or awning covered the entrance to the beauty parlor. She also noted that there was a light in the ceiling behind her, but "no lights on the door." For whatever reason, when Mrs. Lloyd passed through the doorway she thought that she was stepping directly onto the sidewalk and stepped *out* instead of *down*. She then fell and broke her hip. On cross-examination Mrs. Lloyd stated that she "saw the street and steps both," but reiterated in the same sentence that "they all looked alike." [1] The appellees, through the testimony of Mrs. Sokolowski, introduced evidence that in each of the front windows there were two spotlights which were designed to "show what was being displayed in the window," two 70 watt bulbs between the spotlights in each window, and two other bulbs on the side of each window — "enough light to make it really bright." This is the only evidence relative to the condition of the lighting in the store which the appellant could not be said to have challenged unless one were to regard her general statements concerning outside

---

1. Lest one be misled, it should be noted that the appellees introduced substantial evidence which was in direct opposition to the appellant's contentions, including a written statement given by the appellant the day after the accident. However, the appellant stated in her oral testimony that she "really didn't read" the statement, that she was groggy when she signed it [she had undergone an operation to insert a pin in her hip that day], and otherwise disputed most of the appellees' evidence. It is obvious from the verdict that the jury chose to believe appellant's oral testimony, and for the reasons previously stated we assume the truth of that testimony.

572

lights as precluding the possibility that the front windows were illuminated. We do not regard her statements as controverting the appellee's evidence, and assume for the purpose of this opinion that the front windows were illuminated as Mrs. Sokolowski testified. Indeed, in all fairness, it may be said that this statement of Mrs. Sokolowski's concerning the front window illumination is corroborated by the signed statement which Mrs. Lloyd gave the day following the accident in which she recalled: "It was still daylight outside and there are lights lit in the new room being built on the shop. * * *"

This Court, not infrequently, has had occasion to repeat the general statement of the law governing the duty owed by the proprietor of a commercial establishment to a business invitee, to the effect that the shopkeeper must take care to maintain the premises in a reasonably safe condition and give warning of latent or concealed perils. *Mondawmin Corporation v. Kres*, 258 Md. 307, 315, 266 A. 2d 8 (1970), *Tie Bar Inc. v. Shartzer*, 249 Md. 711, 715, 241 A. 2d 582 (1968); *Gast, Inc. v. Kitchner*, 247 Md. 677, 682, 234 A. 2d 127 (1967). This does not mean that the storeowner is an insurer of the safety of his business invitees. *Honolulu Ltd. v. Cain*, 244 Md. 590, 595, 224 A. 2d 433 (1966). If the injured person knew or should have known of the dangerous condition, there is no right to recovery. *Finzel v. Mazzarella*, 248 Md. 227, 230, 235 A. 2d 726 (1967), the reason for the latter ruling being that the storeowner's liability is based on a presumption that he has greater knowledge concerning the dangerous condition than the invitee. *Ludloff v. Hanson*, 220 Md. 218, 224, 151 A. 2d 753 (1959).

In order to find liability on the part of the storeowner the jury must find, (1) that the storeowner had actual or constructive notice of a condition which created an unreasonable risk of harm to the invitee, (2) that the storeowner should have anticipated that the invitee would not discover the condition or realize the danger, or would fail to protect herself from the danger, and (3) that the storeowner failed to take reasonable means to make the prem-

ises safe or to give adequate warning of the condition to the invitee. *Gast, Inc. v. Kitchner,* 247 Md. 677, 685, 234 A. 2d 127 (1967) ; Restatement (Second) of Torts § 343 (1965).

Many years ago this Court noted that different levels connected by steps is a relatively normal condition to be anticipated by persons of ordinary sensibilities, and that an owner of premises would not be liable to an invitee for injuries sustained by falling on the steps, absent something unusual about the construction or surrounding conditions of them. *Long v. Joestlein,* 193 Md. 211, 217, 66 A. 2d 407 (1949). If stairs and steps do not normally create an unreasonable risk of harm, what is it about the steps at the entrance to Mrs. Sokolowski's beauty parlor which might make them "unusual?" For one thing, they are constructed in such a way that in passing over the threshold when leaving one faced a rather abrupt drop, instead of the more usual condition which would allow a person to first step out onto a platform and then down (two risers and two treads instead of the two risers and one tread in our case). This would be significant were the stairway in question located either immediately inside an entrance to a building as in *Austin v. Buettner,* 211 Md. 61, 124 A. 2d 793 (1956) cited by the appellant, or perhaps if the door in this case opened by pushing it *out* as one was leaving. However, as one leaves Mrs. Sokolowski's beauty parlor, one pulls the door *inward.* The result is that, as the appellant testified, she had to take one or two steps after opening the door before reaching the first change in elevation, thereby negating any element of surprise. See generally *Austin v. Buettner, supra.* At any rate, the appellant testified that she "saw the steps," and it is apparent that the unusual construction of the steps was not the proximate cause of her fall. Mrs. Lloyd presses more seriously the claim that the steps and the sidewalk "blended together," and thereby would raise the inference that either the choice of the materials or inadequate lighting, or a combination of both, caused her to miss her step and fall.

This Court has, on prior occasions, considered what is termed the "blending effect" of certain materials as being the cause of the plaintiff's injury. See *Manor Country Club, Inc. v. Richardson*, 253 Md. 319, 323, 252 A. 2d 847 (1969) (woman tripped over protruding fireplace ledge); *Stevens v. Dovre*, 248 Md. 15, 19, 234 A. 2d 596 (1967) (woman stepped from concrete slab to concrete walk at night); *Evans v. Hot Shoppes, Inc.*, 223 Md. 235, 239, 164 A. 2d 273 (1960) (woman tripped over magazine rack in restaurant.) These cases, while factually somewhat different than the case at bar, rejected the "blending" argument on grounds which are apposite to the instant case, namely, that there was nothing inherently dangerous about the instrumentality complained of, and there was adequate lighting under the circumstances. Ultimately then, we believe this case hinges on the adequacy of the lighting involved, and we are of the opinion that there was not sufficient evidence that poor lighting was the proximate cause of the accident to allow the question of lighting to be submitted to the jury.

We think a look at the testimony in the record explains better than narration the lack of any real issue on the question of lighting. Mrs. Lloyd on cross-examination responded in this manner:

\* \* \*

"Q. Could you see the street from the door when you opened it?

A. I saw the street and steps both, but they all looked alike because it was dark and cloudy, and drizzly, and it was just a miserable night.

\* \*. \*

"Q. Never tripped down a step when you missed a step?

A. I couldn't tell you. I could have tripped on the weatherstripping. It was sitting up far enough.

Q. You could have tripped on the weather stripping. When did you remember that?

"A. I couldn't say. I'm just bringing it up as a point. I didn't remember it specially. I'm just bringing it up.

K. Well, did you see weather stripping?

A. Yes, I saw it.

Q. So it was plain enough to see it, light enough and clear enough to see the weather stripping, right? What else did you see beside the weather stripping?

A. I just saw the sidewalk, I thought."

The evidence thus indicates that it was not yet dark outside, and that there was enough light, from whatever source, so that Mrs. Lloyd could not only see the steps in question, but the weather stripping as well. There was never any allegation by Mrs. Lloyd that she could not see where she was going. We cannot find anything in the case at bar which would have indicated to the appellees that they were creating an unreasonable risk of harm. And, even if the appellees had realized that they were creating an unreasonable risk, there is nothing in the record to indicate that they had any reason to assume that the "unreasonable risk" (if such existed) would not be discovered by Mrs. Lloyd or any other customer leaving the beauty parlor at that time of day. Accordingly, we conclude that the appellant failed to establish any primary negligence on the part of either of the appellees, and for that reason, we need not discuss any question of Mrs. Lloyd's contributory negligence.

There remains but one further matter to be discussed. Appellant contends that evidence which she introduced relative to possible Building Code violations in the construction of the steps was improperly excluded. A review of the record indicates that there was never any proof that the pertinent sections of the Building Code were applicable to the building in which the beauty parlor was located, and as we have stated earlier in this opinion, it is apparent from the testimony that any alleged violations

in the construction of the steps were not the proximate cause of the injuries suffered by Mrs. Lloyd.

For the foregoing reasons, the ruling of the lower court should be affirmed.

*Judgments affirmed; costs to be paid by appellant.*