BENDER to use of Maryland Hospital Service *v.* NALEE, INC. t/a Pimlico Hotel

[No. 290, September Term, 1970.]

*Decided March 2, 1971.*

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN, SINGLEY, SMITH and DIGGES, JJ.

*John J. Hirsch,* with whom were *Paul E. Gaeng* and *Elizabeth M. Eckhardt* on the brief, for appellant.

*Samuel S. Smalkin* and *John F. Linsenmeyer* for appellee.

SINGLEY, J., delivered the opinion of the Court.

Mrs. Marian Bender, the appellant here and plaintiff below, had for more than 20 years visited the Pimlico Hotel, a restaurant owned and operated by Nalee, Inc., "practically every day" during the spring and fall rac-

ing seasons at Pimlico. On some occasions she would use the Park Heights Avenue entrance, at other times the Hayward Avenue entrance, both of which were nearly identical. On a Saturday afternoon in December of 1965, as she was leaving the restaurant by the Hayward Avenue entrance, she tripped on a perforated rubber mat placed at the top of seven stone steps leading to the sidewalk, and fell down the steps. Mrs. Bender instituted suit for damages in the Baltimore City Court. At the conclusion of the testimony the trial court reserved ruling on the defendant's motion for a directed verdict and fully charged the jury on the issues of negligence and contributory negligence. When the jury returned a verdict in Mrs. Bender's favor, the defendant countered with a motion for a judgment non obstante veredicto, or alternatively, for a new trial. From the granting of a judgment n.o.v., Mrs. Bender has appealed.

In considering on appeal a defendant's motion for judgment n.o.v., "the evidence and all reasonable inferences to be taken from that evidence must be reviewed in the light most favorable to the plaintiff." *Lloyd v. Bowles*, 260 Md. 568, 273 A. 2d 193 (1971). Mrs. Bender testified that on the day of the accident, she parked her car on the hotel's parking lot; paid a parking charge of $2.00, which was refundable, and went to the bar of the hotel to leave the check for her car with the bartender. After speaking briefly to an acquaintance, Mrs. Bender left the hotel by the Hayward Avenue entrance, intending to join her husband, who was waiting outside. Mrs. Bender told what happened next:

> "Well, I opened the door to go out, I pushed the door and took two steps, and immediately my heel, I felt my heel catch, and I went face first down the steps. I couldn't find anything to grab on to. There was just nothing there to grab on to. I landed face first down on the bottom, * * * with my hand [in front of my face]."

Mrs. Bender testified that after her fall, she saw her

shoe at the top of the steps. On cross-examination, Mrs. Bender said that she "didn't think about a mat being there" and later explained this by saying:

> "I said, I didn't look down. I never noticed the mat. The only reason I know there was a mat because when I was on the ground I looked up and I saw my heel stick out, and I knew I had stumbled on the mat."

As we shall explain, it is impossible on the record before us to determine with any precision the size of the perforations in the mat about which Mrs. Bender complains, or the sort of shoe she was wearing.

Mr. Leon Shavitz, the president of Nalee, Inc., testified that the perforated mat was about 70 inches deep and 39 inches wide; that the mat had been replaced periodically, was in "good shape" at the time of the accident; that it "was a similar mat to the kind of mat that [was] used by restaurants all over the country"; that although he readily conceded that it was possible for a woman in spike heels to catch her heel in the mat, between 750 and 1,000 people patronize the restaurant each weekday and "thousands" of women had walked over the mat, or one like it, and Mrs. Bender was the first to fall. There was no testimony that anything was wrong with the mat, and photographs introduced in evidence show a mat twice as wide as it was deep, with no sign of wear.

Oddly enough, there was no testimony as regards the size of the perforations, nor was the shoe worn by Mrs. Bender offered as an exhibit. She showed the jury the shoe she was wearing on the day of the trial, and testified that it was similar to that she was wearing when the accident occurred. Judge Perrott, before whom the case had been tried below, who had seen the shoe, described it, in the opinion which he had filed when granting the motion for judgment n.o.v., as a "spike heel."

Forty years ago, in the case of *Weidman v. Consolidated Gas Elec. Light & Power Co.*, 158 Md. 39, 148 A. 270 (1930) this Court dealt with the problem of a plain-

tiff whose foot caught in a rubber mat. In finding the defendants free from liability, the Court said:

"The defendants, however, were not insurers, and the burden of proof was upon the plaintiff to show, in addition to the happening of the accident, some independent circumstances of fault on the part of the owner and tenant, or of either, that were the proximate cause of her injury. *Arnold v. Green,* 95 Md. 217, 230. In this she failed. The surface of the passageway was not defective. There is no testimony that the runner or mat was not fit, safe, and suitable for the purpose and in the place it was used. Nor was there any proof that the runner or mat had become a trap by reason of some concealed condition or defect which was known or should have been known to the defendants in the exercise of the ordinary care of a reasonably diligent man under the given circumstances. Neither did the testimony disclose that the corporate defendants, through any agent or servant, touched, moved, or changed any part of the mat or runner, which had laid flat and inert for years before the accident, and its position afterwards was not shown to have been any different. The plaintiff alone testified that any part of the mat moved. She stated, at one point in her testimony, that the mat was turned at the edge at the time and in the course of her single footstep, but, at two other points, she weakens the weight of this assertion by testifying that she thought it was turned. However, it is clear that the condition to which the plaintiff ascribed the injury did not exist before, but arose concurrently with, her step. There is no evidence to show what was the cause of the movement described. Nor was there testimony of a failure to inspect or of any defect in the condition of the mat, which had been

in daily use for years, without ever exhibiting any tendency to buckle or turn up at the edge. *Stewart & Co. v. Harman,* 108 Md. 446, 453-455." at 43-44.

In the very recent past, in two cases we have had occasion to consider the duty owed a business invitee. In *Leannarda v. Lansburgh's Department Store,* 260 Md. 701, 273 A. 2d 149 (1971), we upheld the granting of a verdict for the defendant at the close of the plaintiff's case. There the plaintiff, wearing a spiked heel, had tripped over a "loop" in the rug in the dress department of a store. Judge McWilliams, speaking for the Court, pointed out that the "loop" may have been created by the plaintiff's shoe, or by the shoe of another customer so recently that the store could not be charged with knowledge of the defect. See *Rawls v. Hochschild, Kohn & Co.,* 207 Md. 113, 113 A. 2d 405 (1955). The same result had been reached on similar facts in *Selby v. S. Kann Sons Co.,* 73 F. 2d 853 (D.C. App. 1934).

In *Lloyd v. Bowles, supra,* we affirmed a judgment for the defendant in a suit for damages brought by a plaintiff who was injured in a fall from the steps of a beauty shop, saying:

"This Court, not infrequently, has had occasion to repeat the general statement of the law governing the duty owed by the proprietor of a commercial establishment to a business invitee, to the effect that the shopkeeper must take care to maintain the premises in a reasonably safe condition and give warning of latent or concealed perils. *Mondawmin Corporation v. Kres,* 258 Md. 307, 315, 266 A. 2d 8 (1970) ; *Tie Bar Inc. v. Shartzer,* 249 Md. 711, 715, 241 A. 2d 582 (1968) ; *Gast, Inc. v. Kitchner,* 247 Md. 677, 682, 234 A. 2d 127 (1967). This does not mean that the storeowner is an insurer of the safety of his business invitees. *Honolulu Ltd. v. Cain,* 244 Md. 590, 595, 224 A. 2d 433 (1966)."

In *Lloyd,* although there was some question about the adequacy of illumination, the plaintiff testified that she saw the steps.

In sharp contrast to the result reached in *Weidman, Leannarda, Lloyd* and the case before us is that reached in *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 146 A. 282 (1929), where the plaintiff's heel became wedged between a metal tread and the wooden step supporting it. There, because there was evidence that the screw which held the tread to the step was loose, we held that the issue of negligence was properly a jury question, since the plaintiff could not have created the defective condition, and the accident was the result of either defective design or a failure to inspect.

There is no suggestion that such was the situation in the case before us, where there is no evidence of primary negligence. Accordingly, we do not reach the question whether Mrs. Bender was contributorily negligent.

> *Judgment affirmed, costs to*
> *be paid by appellant.*