**Brian TUCKER**

v.

**KFC NATIONAL MANAGEMENT COMPANY.**

**Civ. No. PN–87–182.**

United States District Court, D. Maryland.

July 8, 1988.

tucky Fried Chicken had failed to have a security guard on the premises, and that this failure, in the light of prior fights and robberies in the store, constituted negligence. Kentucky Fried Chicken, which had decided almost two years earlier not to have a security guard based on its judgment that one would aggravate the potential for injury to customers, argued that the law imposes no duty on it to have a security guard, and that any such failure was not the proximate cause of plaintiff's injuries.

The parties have completed discovery and have presented the Court with the facts each is able to muster. The positions of the parties were well briefed and fully argued. After reviewing the issues carefully, the Court will grant defendant's motion for summary judgment on both grounds urged by it.

Brice G. Dowell, Esquire, Towson, Md., for plaintiff.

Thomas M. Trezise, Gary M. Burt, and Semmes, Bowen & Semmes, Towson, Md., for defendant.

## MEMORANDUM

NIEMEYER, District Judge.

The plaintiff, Brian Tucker, who was standing with a friend at the counter of a Kentucky Fried Chicken fast food store waiting for an order, became engaged in a fight with Charles Reeves, who was also standing in line with friends. The incident began over plaintiff's accusation that Reeves took plaintiff's billfold which he had laid on the counter. When Reeves began to wield a knife, the store manager called the police and Reeves was apprehended, but not before plaintiff was seriously injured.

Plaintiff sued KFC National Management Company (Kentucky Fried Chicken) alleging that it did not provide an adequately safe place for its business invitees. In response to Kentucky Fried Chicken's motion for summary judgment, plaintiff focused his claim on the allegation that Ken-

### I

### *Summary Judgment Standard*

Summary judgment may not be granted if there are facts material to plaintiff's claims or inferences fairly deducible therefrom that are in dispute. The defendant in this case has the burden initially of showing his entitlement to a summary judgment. The plaintiff then must come forward with specific facts, by affidavit, deposition testimony or other appropriate method, to demonstrate that there is a genuine issue for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1988).

In his papers plaintiff offered evidence of prior criminal activity both in the community and in the store. He advanced no evidence, however, that Kentucky Fried Chicken had any prior knowledge to anticipate the particular incident that caused the plaintiff's injury or that Kentucky Fried Chicken should have had such knowledge. He presented expert testimony of an expert who concluded that a guard would have mitigated the injury.

In its papers Kentucky Fried Chicken showed that it had concluded some years

before the incident that the presence of a security guard might expose its business invitees to greater risk of injury and it stopped having one.

There is no dispute that the particular incident was not foreseen, not even by Charles Reeves, and that it resulted from the interrelationship of the parties that developed while waiting in line at the counter. No one contends that Kentucky Fried Chicken caused or participated in the fight. Within a few minutes the entire incident was over.

On the obvious difference of opinion as to the utility of a security guard, there is a temptation to submit to the jury the question of whether Kentucky Fried Chicken was reasonable in not having a guard because reasonableness is frequently a question of fact for a jury to decide. That issue becomes material, however, only if, as a matter of law, there is a duty to provide security service. If the duty does not exist, the question of its breach would not be presented, and the difference of opinion would not be material. The existence of *"some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, at 247–48, 106 S.Ct. 2505, at 2510, 91 L.Ed.2d 202 (1986).

## II

### Absence of Duty

Since this case was removed from the state court by reason of diversity of citizenship, the applicable law is that of Maryland.

The duty that a business has to its business invitee is well-defined under Maryland law. The storekeeper owes his business invitee the duty to maintain his premises in a reasonably safe condition and to warn of latent defects or, stated somewhat differently, the duty of reasonable care for the protection of the business invitee. However, the storekeeper is not an insurer of the safety of his business invitees. *Lloyd*

*v. Bowles*, 260 Md. 568, 273 A.2d 193 (1971).

The duty to protect patrons against conduct of third persons does not exceed the general duty of care and duty to warn of hidden dangers. See *Eyerly v. Baker*, 168 Md. 599, 178 A. 691 (1935); *Litz v. Hutzler Brothers Co.*, 20 Md.App. 115, 314 A.2d 693 (1974). A higher duty to protect a private person from the conduct of a third person arises under Maryland law only when a special relationship exists, such as that created by common carrier and passenger. See *Scott v. Watson*, 278 Md. 160, 359 A.2d 548 (1976); *Pennsylvania R.R. Co. v. Cook*, 180 Md. 633, 26 A.2d 384 (1942). The storekeeper and business invitee do not have that special relationship.

In *Scott v. Watson*, plaintiff Scott sued for her father's death. Scott's father was shot in their apartment's parking garage which was part of the premises leased from the defendant. In spite of various security measures installed in the garage, the defendant remained concerned about crime in the neighborhood and previous incidents of crime in the apartment complex itself. On certification from this court of the issue "Does Maryland law impose upon a landlord of an urban apartment complex a duty to tenants to protect them from the criminal acts of third parties committed in common areas within the landlord's control?" the Court of Appeals of Maryland stated:

> [W]e hold that there is no special duty imposed upon the landlord to protect his tenants against crimes perpetrated by third parties on the landlord's premises.
> Id. 278 Md. at 166, 359 A.2d 548.

The duty required was only one of reasonable care for the tenants' protection.

The general duty of reasonable care that may be observed when equipping the premises with lighting, television cameras, locks, alarms, and access does not include a requirement to provide police protection. *Nigido v. First National Bank*, 264 Md. 702, 288 A.2d 127 (1972). If private police protection is undertaken voluntarily by a storekeeper, a negligent undertaking can result in liability. See *Scott v. Watson*, 278 Md. at 171, 359 A.2d 548.

In *Nigido*, the complaint alleged that the defendant bank owed a duty to its customer to have prevented injury to the customer caused during a robbery of the bank by a third-party criminal. The Court of Appeals noted, 264 Md. at 704, 288 A.2d 127, that the complaint was *not* a claim that there had been a breach of the bank's duty to provide *premises* that were reasonably safe. Rather, the customer alleged that the bank was negligent in failing to have its premises "properly guarded" against "foreseeable" robberies. The allegation that a robbery was foreseeable was supported by the further allegation that there was a history of bank robberies at the location. Focusing on the specific criminal conduct of a third party in affirming dismissal of this complaint, the Court of Appeals of Maryland observed that while a robbery might be foreseeable at a location, it does not follow that the shooting of a customer is foreseeable. In holding that the complaint as alleged did not state a cause of action under Maryland law because there was no duty, the Court stated:

> It would be difficult, perhaps impossible, for guards to filter the robbers from the hundreds of daily visitors to the premises. After all, robbers usually are reluctant to disclose the purpose of their visit until after they have entered the premises; until then they look like customers. 264 Md. at 705, 288 A.2d 127.

While the complaint had alleged that the bank had not been "properly" guarded, the court observed that even if there had been an allegation that there was a total absence of guards, the complaint would not have been saved. As the court observed on this point:

> [I]t has occurred to us that not providing armed guards might very well reflect the exercise of sound judgment rather than negligence. 264 Md. at 706, 288 A.2d 127.

Reaching the same result under factually similar circumstances, the Supreme Court of Michigan in *Williams v. Cunningham Drug Stores, Inc.*, 429 Mich. 495, 418 N.W. 2d 381 (1988), concluded that it was against the public policy to impose a duty on private citizens to provide private police. The court said:

> We conclude as a matter of law that the duty of reasonable care a merchant owes his invitees does not extend to providing armed, visible security guards to protect customers from the criminal acts of third parties. The merchant is not an insurer of the safety of his invitees, and for reasons of public policy he does not have the responsibility for providing police protection on his premises. 418 N.W.2d at 385.

Similar statements supported the holdings that no such duty exists in *Cook v. Safeway Stores, Inc.*, 354 A.2d 507 (D.C.1976); *Radloff v. National Food Stores, Inc.*, 20 Wis.2d 224, 121 N.W.2d 865 (1963).

The Court concludes that under Maryland law there is no duty for an owner of a small fast food retail store to provide security guard service for its business invitees. Typically, these establishments are open, readily accessible to the public, small, well-lighted and well-trafficked. Every area of service is only a few feet away from publicly policed areas.

No doubt areas of our community vary in the rate of criminal incidents, and retail establishments in areas where there is a higher rate are exposed to greater risk from third-party criminal activity. But no area is free from this risk which is equally well-known to business invitees. Plaintiff claims that Kentucky Fried Chicken should have insured plaintiff from this risk. While persons may disagree on how this might best be done, the law of Maryland does not require the storekeeper to provide this insurance.

Were the Court to hold otherwise, every newsstand, drug store, fast food establishment, gas station and similar establishment would be required to provide security guard service for its business invitees. The articulation of a duty so broad and with such extensive consequences rests on the legislature and will not be imposed judicially. Would one guard be enough? What procedures would be necessary for the guard to prevent criminal activity? Could the requirement to have a security

force or guard not lead to greater harm and exposure to business invitees by confrontation? These are not questions of reasonableness for the jury to decide, but are questions of duty.

### III

#### *Proximate Cause*

■ Focusing on the harm to plaintiff, the absence of private security guard service was not the proximate cause of plaintiff's injuries. Plaintiff and Reeves each walked into the premises as any other customer of Kentucky Fried Chicken. Nothing in the record suggests that a security guard would have denied either party access to the facility, and nothing has suggested that a security guard would even have had reason to search or prevent entry of either of the persons. Nothing in the record suggests that any aspect of the Kentucky Fried Chicken facility or other conduct on the part of Kentucky Fried Chicken gave rise to the incident or aggravated or it. The incident occurred spontaneously when the two customers were standing in line waiting for service. Once the altercation started, it would be sheer speculation to determine how the security guard would have prevented the injury; considering the spontaneity and brevity of the incident, he most likely could not have prevented it. If he were wearing a gun, would he have used it or would the courts have expected him to have used it? In the face of an assault, he might have been justified in taking action, but his failure to do so could not be the cause of the incident.

In Maryland, the shopkeeper still could be held liable if a breach of duty "enhanced the likelihood of the particular criminal activity which occurred." *Scott v. Watson,* 278 Md. 160, 173, 359 A.2d 548 (1976). This liability rests on the principles of the Restatement of Torts (Second) § 448, which provides:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which offered an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

The allegations and facts demonstrated of record that no one, not even Reeves, knew that he was going to be accused of lifting the billfold on the counter and that a fight would ensue. As the record stands, both plaintiff and Reeves entered the store to purchase food, not to commit or provoke criminal conduct.

It is regretful that the plaintiff and Reeves became involved in the altercation and yet more regretful that the plaintiff was injured. The fact that this occurred on the premises of Kentucky Fried Chicken was fortuitous. That coincidence did not impose a duty on Kentucky Fried Chicken to have either anticipated or prevented the particular incident, and the absence of the security guard demanded by plaintiff was not the legal cause of his injury.

For all of the foregoing reasons, the Court will enter judgment in favor of Kentucky Fried Chicken.