**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES STANLEY BIAS, SR., as
Personal Representative of the
Estate of, Individually, as Natural
Parents and Next of Kin of the
Decedent, aka, James Stanley Bias,
Jr.; LONISE BIAS, Individually, as
Natural Parents and Next of Kin of
the Decedent, aka, James Stanley
Bias, Jr.,
Plaintiffs-Appellants,

v.

IPC INTERNATIONAL CORPORATION, a

Corporation; EQUITY PROPERTY
MANAGEMENT CORPORATION, a
Corporation; SAMUEL ZELL, as
Trustee for Trust No. 7000; KAY
JEWELERS, a Corporation,
Defendants-Appellees,

and

INTERNATIONAL PROTECTIONS
CORPORATION (IPC), a Corporation;
EQUITY PROPERTIES AND DEVELOPMENT
COMPANY, a Corporation,
Defendants.

No. 95-2666

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-92-2404-DKC)

Argued: December 6, 1996

Decided: March 6, 1997

Before RUSSELL and MOTZ, Circuit Judges, and MICHAEL, Senior United States District Judge for the Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

## COUNSEL

**ARGUED:** Prudence Bushnell, SPENCER H. BOYER & ASSO-CIATES, Silver Spring, Maryland, for Appellants. Christopher Redmond Dunn, DECARO, DORAN, SICILIANO, GALLAGHER, SONNTAG & DEBLASIS, Lanham, Maryland, for Appellee Kay Jewelers; Michael McGowan, MCCARTHY, BACON & COS-TELLO, Lanham, Maryland, for Appellee IPC International; Franklin T. Caudill, ALBRIGHT, BROWN & CAUDILL, Baltimore, Maryland, for Appellees Equity Property and Zell. **ON BRIEF:** Joanne Maria Vasco, SPENCER H. BOYER & ASSOCIATES, Silver Spring, Maryland, for Appellants.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Plaintiffs-appellants James Stanley Bias and Lonise Bias are the parents of James (Jay) Stanley Bias, Jr., who was shot dead by Jerry Tyler on December 4, 1990 during an altercation in a Maryland shopping mall parking lot. Defendants are Kay Jewelers, where Bias and Tyler initially encountered each other; Equity Property Management Corp. ("EPMC"), the managing agent of the shopping mall; Samuel Zell, the trustee of the shopping mall property; and IPC International

2

Corp. ("IPC"), the company responsible for providing security at the shopping mall. Appellants contend that defendants' negligence caused their son's death. This appeal arises out of the district court's grant of summary judgment to the defendants.

"Rule 56(c) of the Federal Rules of Civil Procedure requires that the district court enter judgment against a party who, `after adequate time for discovery . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Stone v. Liberty Mut. Ins. Co., Nos. 95-1110 & 95-1148, slip op. at 5 (4th Cir. Jan. 28, 1997) (quoting Celotex Corp. v. Catrett , 477 U.S. 317, 322 (1986)). We review a district court's grant of summary judgment de novo. See Cooke v. Manufactured Homes, Inc. , 998 F.2d 1256, 1260 (4th Cir. 1993). Because the district court laid out in detail the facts underlying this case, we will simply summarize the events leading up to Mr. Bias's death. Although some of these facts are in dispute, any such disputes are resolved in favor of appellants as non-movants. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587 (1986); Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995).

Prince George's Plaza is a covered shopping mall located in Prince George's County, Maryland. On December 4, 1990, Shauntelle Tyler was working at a Kay Jewelers store located inside the shopping mall. Ms. Tyler's husband, Jerry, telephoned his wife at work, and it was during this conversation that Ms. Tyler informed her husband that she was leaving him. After hanging up the telephone, Ms. Tyler informed a co-worker and the store manager that she was worried that her husband might come to the store to "try to start a fight with me" or "act stupid." Ms. Tyler's prediction proved correct; Mr. Tyler soon arrived at the store to confront his wife, who at that time was helping Mr. Bias at the service counter.

Mr. Bias had come to Kay Jewelers with two friends to show them a ring that he was having resized. By the time that Mr. Tyler interrupted Ms. Tyler and Mr. Bias, Mr. Bias's friends had left for other parts of the mall. Although the evidence is in some dispute, appellants contend that Mr. Tyler accused Mr. Bias of flirting with his wife. Ms. Tyler left the two men and went to the back room that was reserved for employees. A confrontation between Mr. Tyler and his wife then

3

ensued in the back room of the store, during which Mr. Tyler threw a stapler at his wife's head. At that point, the store manager intervened, escorting Mr. Tyler out of the store without having to use any force.

While the Tylers were arguing, Bias and his two friends had reunited outside the store. When Mr. Tyler was escorted out of the store, he found Mr. Bias directly in front of the store entrance. Words were again exchanged. Mr. Tyler told Mr. Bias that he had "something for [him] outside." As the dispute between Mr. Tyler and Mr. Bias escalated, one of Mr. Bias's friends intervened, leading Mr. Bias out of the mall and telling him that "it was not worth it." As they left, Mr. Tyler threatened to "cap" Mr. Bias.[1] Mr. Tyler then left by another mall exit.

Once outside, Mr. Bias and his friends got in a Toyota Forerunner belonging to Mr. Tydus Mathis. Mr. Bias was seated in the front passenger seat. As the truck arrived at one of the mall parking lot's exits, Mr. Tyler and another man pulled alongside in a car. After yelling at Mr. Bias, Mr. Tyler fired between seven and ten gunshots into Mr. Mathis's vehicle, striking Mr. Bias and injuring another occupant seated in the rear of the truck. Mr. Mathis immediately drove to a nearby hospital where Mr. Bias was pronounced dead.

The district court granted defendants' motions for summary judgment, finding that (1) Kay Jewelers did not have a special duty to protect Mr. Bias from the criminal acts of third parties; (2) even if such a duty existed, Kay Jewelers was not the proximate cause of Mr. Bias's death; and (3) neither IPC's substandard and negligent security nor any negligence on the part of EPMC or Zell was the proximate cause of Mr. Bias's death. Appellants appeal from each of these conclusions, which the court will address in turn.

_____

**1** In "rap" music aficionados' slang, the term "to cap" an individual means to shoot someone. See Esther Iverem, A Death as Real as It Gets; Tupac Shakur's Gangsta Image Was the Rapper's Fatal Flaw, Wash. Post, Sept. 14, 1996, at C1.

I. Kay Jewelers' Liability

A. Special Duty

Plaintiffs first appeal from the district court's decision that Kay Jewelers did not have a special duty to protect Bias from the criminal acts of third parties by contacting mall security. In general, "there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a `special relationship' exists either between the actor and the third person or between the actor and the person injured." Hartford Ins. Co. v. Manor Inn of Bethesda, Inc., 335 Md. 135, 150, 642 A.2d 219, 226 (1994) (quoting Ashburn v. Anne Arundel County, 306 Md. 617, 628, 510 A.2d 1078, 1083 (1986)); see also Restatement (Second) of Torts § 315 (1965). [2] In Tucker v. KFC National Management Co., 689 F. Supp. 560, 562 (D. Md. 1988), aff'd, 872 F.2d 419 (4th Cir. 1989), the court held that under Maryland law, a storekeeper and its customer do not enjoy the "special relationship" necessary to implicate a higher duty of care. Plaintiffs argue, however, that under the Maryland Court of Appeals's decision in Southland Corp. v. Griffith, 332 Md. 704, 715-16, 633 A.2d 84, 89 (1993), a special relationship exists between a store owner and its customer such that the store owner has a duty to take reasonable action to protect its customer from an unreasonable risk of physical harm, including the threat of violence by a third party.

In Southland Corp., a plaintiff sought to recover damages for injuries he received when he was assaulted in the parking lot of a 7-Eleven convenience store. Although the store clerk was informed of the altercation taking place on his premises, he refused to telephone the police, even after repeatedly having been requested to summon

_____

[2] Section 315 states:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

assistance. <u>Southland Corp.</u> modifies <u>Tucker</u> only to the extent that the Court of Appeals of Maryland

> adopt[ed] § 314A of the Restatement, and in particular embrace[d] the proposition that an employee of a business has a legal duty to take affirmative action for the aid or protection of a business invitee who is in danger while on the business's premises, provided that the employee has knowledge of the injured [or endangered] invitee and the employee is not in the path of danger.

<u>Id.</u> at 719, 633 A.2d at 91.**3** <u>Southland Corp.</u> does not impose a special duty on store owners to protect their customers from unforeseen acts of third parties; a business owner "is not required to take precautions against a sudden attack from a third person which he has no reason to anticipate," nor is he "required to take any actions until he knows or has reason to know that the person is endangered." Restatement (Second) Torts § 314A comments e & f.

In the instant case, there is no evidence that Kay Jewelers was in any way aware that Mr. Bias was in danger of assault or murder by Mr. Tyler. The only verbal exchange between Mr. Bias and Mr. Tyler in the store appears to have been of limited duration and scope, and a review of the video tape taken by the store's security cameras and

_____

**3** Section 314A is entitled "Special Relations Giving Rise to Duty to Aid or Protect," and states:

> (1) A common carrier is under a duty to its passengers to take reasonable action
>
> (a) to protect them against unreasonable risk of physical harm, and
>
> (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

. . . .

> (3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

6

submitted for this court's review suggests that no anger or aggression was directed towards Mr. Bias while Mr. Bias was in the store. Because there is no evidence that any of Kay Jewelers's employees were aware of a particularized danger to Mr. Bias, Kay Jewelers was under no special duty to summon security to prevent Mr. Tyler from harming Mr. Bias. Accordingly, Kay Jewelers is subject only to the general duty of care owed by a business to its customers.

B. Proximate Cause

Maryland has long recognized that "the landowner's duty to business invitees is to use reasonable and ordinary care to keep his premises in a safe condition and to protect invitees against the dangers of which the landowner is aware or which, with reasonable care, he could have discovered." Pahanish v. Western Trails, Inc., 69 Md. App. 342, 355, 517 A.2d 1122, 1128 (1986) (citing Lloyd v. Bowles, 260 Md. 568, 572, 273 A.2d 193 (1971)). "A landowner is not, however, an insurer of the safety of his business invitees." Id. (citing Maryland State Fair & Agric. Soc'y v. Lee, 29 Md. App. 374, 378, 348 A.2d 44, 48 (1975)). In order for Kay Jewelers to be held liable under a general duty of care, the store must have had actual or constructive knowledge that Mr. Bias was under an unreasonable risk of injury while at its store. Appellants argue that Kay Jewelers had actual knowledge that Mr. Bias was in danger because Kay Jewelers knew of Mr. Tyler's "violent propensities" towards his wife. In addition, appellants contend that the general crime patterns in the area served to give Kay Jewelers constructive notice that its customers were in danger of criminal assault.

Kay Jewelers may have had actual knowledge that Mr. Tyler posed a threat to his wife, but there is no evidence that it was reasonably foreseeable that Mr. Tyler was a danger to the store's customers. See supra part I.A. Similarly, general crime patterns simply impose "a duty to take reasonable measures, in view of the existing circumstances to eliminate the conditions contributing to the criminal activity," if the criminal activity takes place on the business's premises. Scott v. Watson, 278 Md. 160, 169, 359 A.2d 548, 553 (1976). Although evidence was introduced that armed robberies had taken place at the store in the past, such incidents did not serve to put Kay Jewelers on notice of any threat that Mr. Tyler might pose to its cus-

7

tomers. Rather, such incidents serve to give Kay Jewelers constructive notice of the conditions that might encourage further robberies, such as unrestricted access to showcases, etc.

Given the facts before the court, there is insufficient evidence for this court to conclude that Kay Jewelers was on notice that Mr. Tyler posed a risk to Mr. Bias. Accordingly, no duty to summon security would attach. Even if, however, Kay Jewelers had actual or constructive knowledge of conditions giving rise to a duty to contact security, the district court properly concluded that Kay Jewelers was not the proximate cause of Bias's death.

> The act of a third person in committing an intentional tort is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which offered an opportunity to the person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Tucker, 689 F. Supp. at 564 (quoting Restatement (Second) of Torts § 448). Mr. Tyler's outburst in the store was such that none of the employees felt that Mr. Tyler was a threat to Mr. Bias nor even particularly threatening in general. Ms. Tyler never saw her husband argue with Mr. Bias, see Deposition of Shaunelle Tyler at 9 (Dec. 27, 1993) (J.A. at 32) [hereinafter Tyler Deposition], nor even come in contact with Mr. Bias, id. at 17 (J.A. at 35); see also Deposition of Cindy Coleman at 71 (Oct. 1, 1993) (J.A. at 151). Ms. Tyler never knew her husband to carry or own a firearm. Tyler Deposition at 20 (J.A. at 38). Finally, Ms. Tyler did not summon security or the police because she did not think the altercation "was anything major." Id. at 26 (J.A. at 42).[4] In addition, the store manager was neither frightened of Mr. Tyler, nor did he believe that Mr. Tyler was a danger to his wife.

_____

[4] Ms. Tyler called the police after her husband threw the stapler, but she hung up the telephone once Mr. Tyler was escorted from the store. She later telephoned her father to tell him that"Jerry was acting simple." Tyler Deposition at 26 (J.A. at 42).

8

Deposition of Michael McCutcheon at 111 (Oct. 1, 1993) (J.A. at 105). Presented with this undisputed testimony, this court concludes as a matter of law that Mr. Tyler's subsequent attack was insufficiently foreseeable to permit holding Kay Jewelers liable as the proximate cause of Mr. Bias's death. Accordingly, the district court's grant of summary judgment to Kay Jewelers will be affirmed.

II. IPC's Liability

Although Maryland's Court of Appeals has never explicitly adopted § 324A of the Restatement (Second) of Torts, other courts have concluded that "[i]t is undisputed that the doctrine is part of the tort law . . . of Maryland." In re Sabin Oral Polio Vaccine Prods. Liab. Litig., 774 F. Supp. 952, 954-55 (D. Md. 1991), aff'd 984 F.2d 124 (4th Cir. 1993); see also E.G. Rock, Inc. v. Danly, 98 Md. App. 411, 423-24, 633 A.2d 485, 491 (1993) (noting that§ 324A has "been recognized as a part of Maryland law"). Under§ 324A,

> [o]ne who undertakes . . . to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking if .. . his failure to exercise reasonable care increases the risk of such harm.

As the company responsible for providing security for the shopping mall and its patrons, IPC had a duty to protect Mr. Bias and all of the patrons from the risk of physical harm occasioned by third parties.

At the time that Mr. Bias and Mr. Tyler had their altercation, only one security officer was monitoring the interior of the shopping mall. See Deposition of Gerald Washington at 68-69 (May 31, 1994) (J.A. at 280-81).**5** Plaintiff's expert testified that, at a minimum, at least two security officers were required to monitor effectively the interior of the shopping mall. Deposition of Anthony T. Potter at 55 (Aug. 26,

_____

**5** At the time of the altercation, three of the security guards, including one trainee, were outside in the shopping mall's parking lot responding to an automobile fire.

9

1993) (J.A. at 389) [hereinafter Potter Deposition]. Assuming for the purposes of this decision that the failure to maintain two security guards in the interior of the shopping mall constituted a breach of IPC's duty, this court nonetheless concludes as a matter of law that IPC's breach was not the proximate cause of Mr. Bias's murder.

The simple fact of the matter is that even if IPC had adequately staffed the interior of the shopping mall, the events transpired so quickly and unexpectedly that IPC could not have prevented this tragedy. Mr. Bias was already in Kay Jewelers when Mr. Tyler entered the store. Mr. Bias left the store two minutes and ten seconds later. A review of the security video tape reveals that nothing out of the ordinary appears to have had occurred during the time that both men were in the store. Appellants at oral argument conceded that only between four and sixteen minutes elapsed from the time that Mr. Tyler left the store and the time that Mr. Bias arrived at the hospital. During that time, Mr. Tyler and Mr. Bias met and exchanged words in the common area of the shopping mall -- an exchange that lasted no more than a minute and a half, see Deposition of Andre Campbell at 85 (Dec. 27, 1993) (J.A. at 209) [hereinafter Campbell Deposition]; exited the shopping mall by separate exits; got into their respective vehicles and proceeded towards the parking lot exit; had the altercation at the exit; and drove to a nearby hospital, a journey that in and of itself took possibly three minutes, see Transcript of Proceedings at 28, Maryland v. Tyler, No. 90-2351 (Md. Cir. Ct., Prince George's County, Apr. 25, 1991) (J.A. at 185) (testimony of Tydus Mathis).

The speed with which the events transpired is not the only fact that counsels against a finding of proximate cause. An off-duty uniformed police officer who witnessed the altercation outside of the store did not feel compelled to search out a security officer or intervene because he did not believe that the dispute would escalate to violence. See Deposition of Delaney A. Oliver at 15 (July 6, 1994) (J.A. at 248). Andre Campbell, a friend of Mr. Bias and a witness to the dispute admitted that he never sought out or even looked around for security personnel during the altercation. See Campbell Deposition at 83 (J.A. at 207). Finally, Tydus Mathis, who also witnessed the dispute inside the mall, believed the dispute to be over when Mr. Bias and Mr. Tyler left by separate exits, noting that Mr. Bias and Mr. Mathis joked about the altercation on the way out of the shopping

10

mall. See Deposition of Tydus Mathis at 24 (Dec. 27, 1993) (J.A. at 161). Based on this uncontroverted evidence, it is hard to imagine that the character of the dispute was such that security would have intervened if it had been present.

Moreover, even if security had intervened, there is no evidence that events would have transpired differently. Plaintiff's expert testified that if security had intervened, the parties should have been separated, placed in their cars, and made to leave the property. See Potter Deposition at 104-05 (J.A. at 395-96). This is exactly what occurred. Mr. Bias and Mr. Tyler were led by their respective friends out different doors of the shopping mall to their vehicles so that they could leave the property. That Mr. Tyler would pursue Mr. Bias in his automobile was an event that was not foreseen by any of the witnesses to or participants in the altercation. If Mr. Tyler's actions were not foreseeable to the participants, it is difficult to envision how they could have been foreseeable to any security officers so that IPC could be held to be the proximate cause of Mr. Bias's death.

At bottom, the murder of Mr. Bias is but another one of the many random acts of violence that have unfortunately become all too common in our nation's cities. It is undisputed that Mr. Bias's murder is a tragedy, but IPC cannot be held to be the proximate cause of that unforeseeable event. Accordingly, summary judgment on behalf of IPC was appropriate and will be affirmed.

III. EPMC and Zell's Liability

Appellants' claims against EPMC and Zell are based on EPMC and Zell being vicariously liable for the actions of their subcontractor, IPC. See Rowley v. Mayor of Baltimore, 305 Md. 456, 474, 505 A.2d 494, 503 (1986); Restatement (Second) of Torts § 425 (stating that "[o]ne who employs an independent contractor to maintain in safe condition land which he holds open to the entry of the public as his place of business . . . is subject to the same liability for physical harm caused by the contractor's negligent failure to maintain the land . . . in reasonably safe condition, as though he had retained its maintenance in his own hands"). Because IPC has been found not to be the proximate cause of Mr. Bias's death, summary judgment on behalf of EPMC and Zell is also appropriate.

For the aforementioned reasons, the district court's grant of summary judgment to defendants will be

AFFIRMED.

12