Donald JACKSON

v.

## A.M.F. BOWLING CENTERS, INC.

No. Civ.A. DKC99–2704.

United States District Court,
D. Maryland.

Jan. 23, 2001.

Curt S. Hansen, Milliken, Van Susteren & Canap, Jensen Egerton Barber, Jensen E. Barber & Associates, Washington, DC, for Plaintiff.

Mark T. Foley, Sasscer, Clagett & Bucher, Upper Marlboro, MD, for Defendant.

### MEMORANDUM OPINION

CHASANOW, District Judge.

Pending before the court and ready for resolution in this negligence action is the motion for summary judgment of Defendant, A.M.F. Bowling Centers, Inc. ("A.M.F."). No hearing is deemed necessary, and the court now rules pursuant to Local Rule 105.6. For the reasons that follow, the court shall grant the motion.

### I. Background

The following facts are undisputed or presented in the light most favorable to Plaintiff. Defendant entered into an oral agreement with Mr. Chauncy Maddox and Icy Ice Productions ("Icy Ice") to rent the A.M.F. bowling alley, in Adelphi, Maryland, every Sunday night for eight weeks from 10:00 p.m. – 2:00 a.m. so that Maddox and Icy Ice could host a series of events.[1] Icy Ice and Maddox agreed to pay Defendant $2,000 per event to rent the facility. Icy Ice also agreed to be responsible for all physical damage that occurred during the events. Paper no. 16, Defendant's Answers to Interrogatories, No. 21 (hereinafter Plaintiff's exhibit 1). The circumstances involved in this case occurred at one of these events, a combination concert and dance. Specifically, it was the third concert and dance held at the bowling center under the A.M.F.–Icy Ice oral agreement.

Around midnight on July 21 or 22, 1996, Plaintiff, and five friends—Jeff Simms, Tabryn Taylor, Damien (no last name provided), William Miles and Thomas Payne—arrived at A.M.F. Upon entering the bowling alley, security guards searched Plaintiff, and presumably all other attendees. The guards made Plaintiff take off his shoes and smacked them together to ensure they contained no hidden weapons, made him take off his belt and checked his pants, patted him down, and checked his wallet and pockets. Paper no. 15, Deposition of Donald Jackson (hereinafter Defendant's exhibit 1) at 62–64.

It is undisputed that Maddox and Defendant initially agreed to employ 20 security guards. Defendant was to provide six guards and Icy Ice was to employ 14. For some reason, Icy Ice, with Defendant's knowledge, cancelled six of the 20 guards.[2]

---

1. Neither Icy Ice nor Maddox are parties in this suit.

2. Plaintiff claims that Defendant and Icy Ice were to split the cost of security. Paper no.

It is also undisputed that several employees of Defendant were working that night, including the center manager, assistant manager, a mechanic and snack bar attendants.[3]

Shortly after entering the bowling alley, Plaintiff and Simms began dancing near each other. A group of approximately seven men began slam dancing beside Plaintiff, and one of the slam dancers bumped into him. *Id.* at 77–78. The dancers had apparently formed some sort of circle, and Plaintiff tried to get out of the way by stepping between them. *Id.* at 76, 80. The same dancer who bumped into Plaintiff then jumped directly in front of him, prompting Simms to intervene by stepping between them. Simms and the dancer then shook hands, and the altercation seemingly ended. *Id.* at 82.

When Plaintiff next turned around, another person in the group swung at him, but missed. *Id.* at 83. A fight ensued involving "a lot of other guys". *Id.* at 84. Plaintiff explains that he was not the target of an attack. *Id.* He also states that his friend Taylor also was fighting. *Id.* at 85. During the fight, another man, Jayzan Allen, jumped on Plaintiff's back, pushing him down on a table. *Id.* at 83, 85. Plaintiff thought Allen had hit him in the stomach, but later realized Allen had actually stabbed him. Simms pulled Allen off of Plaintiff. *Id.* At that time, security guards arrived and broke up the fight. A guard picked up Plaintiff from the table and told him to stand at that spot. *Id.* at 87.

As a result of the fray, Defendant's employees decided to shut down the event. Attendees were asked to leave and did so in an orderly fashion. *Id.* at 91. Plaintiff

had known one of the security guards, Blaine J. Lawrence, since childhood. Lawrence approached Plaintiff and directed him to leave through a particular door. Paper no. 17 (Deposition of Donald Jackson at 93). Lawrence told Plaintiff that he did not believe the group with whom Plaintiff had been fighting had exited through that door.[4] *Id.* at 95–96. As he left, Plaintiff was accompanied by his friend Payne. *Id.* at 93. Plaintiff claims that in the excitement, he had not realized yet that he had been stabbed. Consequently, as he was leaving, he did not tell any of the security guards or A.M.F. employees that he had been stabbed or that he needed medical assistance. Defendant's exhibit 1 at 90.

Once outside, Plaintiff saw the same group of men, including Allen. Some of the men were breaking bottles and coming toward Plaintiff. *Id.* at 96. A knife handle was mistakenly thought to be a gun by a person who yelled that Allen had a gun. *Id.* at 97. The crowd began screaming and trying to head back into the bowling alley. Some of the crowd made it back inside, and those who did not began banging on the door. *Id.* at 97–98.

The bowling alley's entrance had two sets of doors separated by a vestibule. The doors closest to the bowling alley closed before Plaintiff could make it back inside, and he only made it as far as the vestibule. At that point he says three men, including Allen, attacked him. *Id.* at 100. Allen stabbed Plaintiff a total of 14 times. *Id.* at 101. The second set of doors apparently were reopening, and Plaintiff sought to escape the attack by reentering the bowling alley. Plaintiff fi-

16 at 10. He cites to Defendant's interrogatory No. 21 to support this assertion. Plaintiff misreads that interrogatory response. Defendant's answer clearly states that while Defendant was to provide six security guards and Maddox was to provide 14 security guards, the latter, or Icy Ice, would bear the cost for all security guards. Plaintiff's exhibit 1, no. 21.

3. Neither party has submitted admissible evidence regarding how many patrons were in attendance that night. Defendant admits, however, that the bowling alley has the capacity to hold 388 persons. Plaintiff's exhibit 1, no. 4.

4. It is not entirely clear how many exits the bowling alley has or how many were used by patrons that night.

nally made his way back inside, but so did Allen. Once inside, Allen threw a bowling ball at Plaintiff, but missed. Allen again exited the bowling alley, and an off-duty police officer shot him in the parking lot. *Id.* at 107–08. Plaintiff fell unconscious, and an ambulance was summoned.

The complaint contains one count of negligence, for which Defendant seeks summary judgment.

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co., Inc. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue of material fact. Fed. R.Civ.P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily ren-

ders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir.1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C.1966), *aff'd*, 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## III. Analysis

Plaintiff asserts that Defendant was negligent under two theories: (1) failing to provide a safe environment to Plaintiff, as a business invitee, and (2) locking Plaintiff out of the premises when he was in danger. Paper no. 16 at 7. Both theories fail.

To recover in a negligence action, a plaintiff must show (1) a duty that was breached, (2) a causal connection between the breach and his injury, and (3) damages. *Brown v. Dermer*, 357 Md. 344, 356, 744 A.2d 47, 54 (2000) (citing *Richwind Joint Venture 4 v. Brunson*, 335 Md. 661, 670, 645 A.2d 1147, 1151 (1994) (citations omitted)). Whether a legal duty exists is a question of law. *Valentine v. On Target, Inc.*, 353 Md. 544, 549, 727 A.2d 947, 949 (1999); *see also* Restatement (Second) of Torts § 328 B(b) (1965) (function of the court is to determine whether duty exists).

The duty Defendant owed to Plaintiff depends on the status he held while on its property. *Rowley v. Mayor and City Council of Baltimore*, 305 Md. 456, 464–65, 505 A.2d 494, 498 (1986) (citing *Sherman v. Suburban Trust Co.*, 282 Md. 238, 242, 384 A.2d 76 (1978); *Macke Laundry Serv. Co. v. Weber*, 267 Md. 426, 298 A.2d 27 (1972)). Neither party disputes that Plaintiff was a business invitee on Defendant's property on the night of the altercation or that Defendant was in possession and control of the premises that night.[5]

A business invitee is "one invited or permitted to enter another's property for purposes related to the landowner's business." *Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md.App. 381, 387–88, 693 A.2d 370, 374 (1997) (citing *Casper v. Chas. F. Smith & Son, Inc.*, 71 Md.App. 445, 457, 526 A.2d 87 (1987), *aff'd*, 316 Md. 573, 560 A.2d 1130 (1989)). A business owes an invitee "a duty to use reasonable and ordinary care to keep the premises safe and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover." *Southland Corp. v. Griffith*, 332 Md. 704, 715–16, 633 A.2d 84, 89 (1993) (citing *Sherman*, 282 Md. at 242, 384 A.2d at 79). As Plaintiff

contends, in some cases, a business may owe its invitees an even greater duty of care.

## A. Heightened duty of care—aiding and protecting invitees

Generally, absent a statute or special relationship, a private party, such as Defendant, is under no legal duty either to control a person's criminal acts so as to prevent harm to another, *Scott v. Watson*, 278 Md. 160, 166, 359 A.2d 548, 552 (1976) (citing Restatement (Second) of Torts § 315), or to render assistance to a person in peril, even if such assistance can be offered without cost or effort, *Southland*, 332 Md. at 716, 633 A.2d at 90 (citations omitted).

In Maryland, a special relationship that gives rise to a duty to aid and protect is that of shopkeeper/business and business invitee. *Id.* at 717, 633 A.2d at 90. In *Southland*, the Court of Appeals of Maryland expressly adopted the duty of care owed to a business invitee as provided in § 314 A of the Restatement (Second) of Torts, and held that

> [A]n employee of a business has a legal duty to take affirmative action for the aid or protection of a business invitee who is in danger while on the business's premises, provided the employee has knowledge of the injured invitee and the employee is not in the path of danger.

*Id.* at 719, 633 A.2d at 91. "The duty to protect ... [a plaintiff] against unreasonable risk of harm extends to risks arising out of" a defendant's conduct or the intentional or criminal acts of third parties. Restatement (Second) of Torts § 314 A cmt. d. Defendant is not required "to take precautions against a sudden attack from a third person which he has no reason to anticipate...." *Id.* cmt. e. He is only required to act when he knows or has reason

---

5. Defendant states that it will concede for purposes of the motion that Plaintiff was an invitee on the night of the fight, but it reserves the right to contest that issue at trial. It also proposes to reserve the right to contest at trial whether Defendant was in possession and control of the premises and whether Plaintiff was Defendant's or Icy Ice's invitee. Paper no. 15 at 6 n. 2.

to know that the plaintiff is in danger or injured. *Id.* cmt. f. A defendant and/or its employees are only required to take action that is reasonable under the circumstances. *Id.* Thus, an employee need only offer assistance if in doing so, he is not endangering himself. *Southland,* 332 Md. at 719, 633 A.2d at 91.

Defendant contends that the security personnel did not know that Plaintiff was injured when he was asked to leave. Thus, without such knowledge, Defendant owed no duty to assist Plaintiff with his injuries. Defendant's argument has merit. By Plaintiff's own admission, a spontaneous fight ensued involving numerous individuals. Security guards broke up the altercation. Plaintiff does not allege that the security personnel delayed in breaking up the fray. A decision was made to end the event and everyone was asked to leave, including Plaintiff. When asked to leave, Plaintiff did not know that he had been stabbed and presents no evidence that Defendant's employees knew either. Moreover, he admits that he did not even tell the security guard that he had been hurt at all. Defendant's exhibit 1 at 90. Thus, Defendant had no knowledge that Plaintiff had been injured and owed him no duty to render assistance based on those injuries.

█ Plaintiff further seeks to prove that Defendant had notice that he was endangered, as Defendant witnessed the attack on Plaintiff. Plaintiff asserts that the staff knew that Plaintiff was involved in an altercation involving numerous people inside the bowling alley. According to Plaintiff's deposition testimony, after security guards broke up the fight, one guard told Plaintiff specifically to stay put, and Lawrence, another security guard, lifted him from a table. Realizing that the people with whom Plaintiff and his friends had been fighting might have been waiting outside, Lawrence advised him which exit to take to avoid them. Plaintiff claims that these facts imposed a duty on Lawrence, and consequently on Defendant, to isolate and protect him.

Plaintiff, however, presents no evidence that Lawrence or anyone else associated with Defendant knew that he had been the victim of an attack inside the bowling alley. By Plaintiff's own admission, the fight involved numerous people, and he was not the focus of the attack. Plaintiff entered the bowling alley with five friends, and at least one of them also was involved in the fight. He does not appear to argue that he explained to the security staff that he had been the victim of an attack, and, as noted above, failed to tell them that he had been injured.

Moreover, in his affidavit, Lawrence also fails to indicate that he knew Plaintiff had been the victim of an attack. Paper no. 16, Plaintiff's exhibit 3, ¶ 5 ("Towards the end of the concert, a fight broke out in the premises among a crowd of people ...."); ¶ 6 ("[A]fter the fight started, employees ... shut down the concert because of the violence[;] ... the people attending the concert were then told to leave...."). Even in the light most favorable to Plaintiff, the evidence presented shows only that security guards knew or should have known that Plaintiff had been one participant in a fight involving numerous people. Plaintiff presents no evidence that Defendant knew or should have known that he, in particular, would be a victim of a criminal attack if he left the building.

The illustrations in § 314 A of the Restatement (Second) of Torts make clear that in order for the heightened duty to be imposed, the defendant must know or have reason to know that the plaintiff was endangered or injured. *See id.* cmt. f, illus. 1 (defendant's employees discover plaintiff has fallen off a train and fail to send aid or tell others); illus. 2 (train crew discover that plaintiff is unconscious yet fail to call for medical help because they assume unreasonably that he is drunk); illus. 3 (fire breaks out in defendant's hotel, and his employees fail to call and warn plaintiff, a guest, to leave); illus. 4 (defendant's employees see that child in department store has his fingers caught in an escalator, but

delay in shutting off the escalator); illus. 5 (plaintiff has a heart attack and specifically asks for a doctor, defendant's employees fail to summon medical care, or to move plaintiff to where he can receive such care). *See also Southland*, 332 Md. at 720, 633 A.2d at 91–92 (defendant's employee knew that plaintiff was in danger, and material factual dispute existed regarding whether employee failed promptly to call police upon request); *Williams v. Cloverleaf Enterprises, Inc.*, No. 99–1106, 2000 WL 135108, at *2 (4th Cir. Feb. 7, 2000) (reversing grant of summary judgement in favor of employer, and holding that case must proceed to jury as defendant's employees witnessed the attack on plaintiff, yet failed to call for help). Plaintiff has failed to produce sufficient evidence of such knowledge on Defendant's part. Thus, Defendant did not have a duty to aid or protect him from the criminal acts of a third party.

## B. General duty of care

With no duty to aid or protect, under Maryland law, Defendant owed Plaintiff only a general duty of reasonable and ordinary care. *Southland*, 332 Md. at 715, 633 A.2d at 89; *see also Tucker v. KFC Nat'l Mgmt. Co.*, 689 F.Supp. 560, 562 (D.Md.1988) (duty includes warning of hidden or latent defects) (citing *Eyerly v. Baker*, 168 Md. 599, 178 A. 691 (1935); *Litz v. Hutzler Bros. Co.*, 20 Md.App. 115, 122, 314 A.2d 693, 697 (1974) (duty to protect invitees from acts of third person does not exceed general duty to such invitees)). Plaintiff claims Defendant was negligent by locking him outside, where he was subject to attack. A business owner, however, is not an insurer of an invitee's safety. *Bender v. Nalee, Inc.*, 261 Md. 82, 87 274 A.2d 85, 87 (1971) (citing *Honolulu Ltd. v. Cain*, 244 Md. 590, 595, 224 A.2d 433 (1966)). In order for Defendant to be held liable, it must have had actual or constructive notice that Plaintiff was at an unreasonable risk of injury while on its premises. *Litz*, 20 Md.App. at 122, 314 A.2d at 697 (citing *Lloyd v. Bowles*, 260 Md. 568, 572, 273 A.2d 193, 196 (1971)).

Plaintiff asserts that Defendant had notice of the dangerous nature of the dance and concert based on the fact that it had allowed two previous events to be held on its premises at which altercations had occurred. This reference to "altercations" is taken from a statement made by former A.M.F. general manager Earl Jeffrey Paugh to the board of license commissioners. In that hearing, Paugh stated simply that at previous events, there had been "minor incidents." Paper no. 16, Plaintiff's exhibit 2 at 2. However, Plaintiff fails to explain the minor incidents that occurred. He presents no evidence in the form of depositions or affidavits from any A.M.F. employees, explaining the nature of these incidents.[6] Moreover, even if these past incidents involved crimes, and there is no evidence that they did, it does not mean that Defendant would have been on notice regarding the particular crime committed against Plaintiff. *See Nigido v. First Nat'l Bank of Baltimore*, 264 Md. 702, 704, 288 A.2d 127, 128 (1972) ("The allegation that this robbery was 'foreseeable' is supported only by the further allegation that there is a 'history of bank robberies at the said location.' But even if it could be said that the robbery was foreseeable it does not follow that the shooting of a customer was foreseeable."). In short, Plaintiff has presented no evidence that Defendant should have known, based on any of these alleged prior minor incidents, that a fight, let alone one involving a dangerous weapon, would have occurred on July 21 or 22.

Plaintiff's reliance on *Shields v. Wagman*, 350 Md. 666, 714 A.2d 881 (1998), a dog bite case, is unavailing. In that case,

---

6. Plaintiff indicated that he tried to depose Paugh but he failed to appear voluntarily at the deposition. Plaintiff further indicated that he again would attempt to depose Paugh and subpoena him to ensure his attendance. Paper no. 14. That apparently has not happened.

the Plaintiffs had produced ample evidence that the landlord had knowledge that the dog was on the premises, had been allowed to run free and was vicious and dangerous (landlord admitted to having conversations with others indicating that the dog was dangerous, and he told the dog's owner that he did not think the dog should be on the premises because of the volume of customers who visited the mall). *Id.* at 688–89, 714 A.2d at 891–92. By contrast, in the present case, Plaintiff presents no evidence showing that, at the very least, Defendant had knowledge of prior fights during these events.

■ Plaintiff also asserts that Defendant had notice because it hired security guards for the event and felt the need to search all patrons as they arrived. Moreover, in his affidavit, Lawrence states that the premises were overcrowded and security guards were unable adequately to control the crowd.[7] Paper no. 16, Plaintiff's exhibit 3 ¶ 4.

Viewing the evidence in the light most favorable to Plaintiff, these facts show that Defendant anticipated that possibly some type of danger could have occurred on the premises. Not only were several security guards (originally 20 were slated) present, but they conducted a very thorough detailed search of every patron, indicating that Icy Ice or Defendant had some idea that patrons might attempt to enter with prohibited items.

Nevertheless, Plaintiff's claim still fails because any negligence on the part of Defendant was not the proximate cause of Plaintiff's injuries. To prove his case, Plaintiff must show not only that Defendant was negligent, but that the negligence produced his injury.

The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's

negligent conduct created a situation which offered an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

*Tucker,* 689 F.Supp. at 564 (quoting Restatement (Second) of Torts § 448).

There is no indication that Defendant knew or should have known that Allen or anyone else had a weapon while inside the premises. The security staff apparently conducted a thorough search of all patrons upon entering. Plaintiff has not argued otherwise. The fight that erupted was spontaneous. The security staff responded quickly and broke up the fight. Further, Plaintiff presents no evidence in the form of expert testimony regarding the number of security guards necessary to prevent any fighting at all. *See e.g., Bias v. IPC International Corp.,* 1997 WL 100925, at *5, 107 F.3d 865 (4th Cir. March 6, 1997) (plaintiff presented expert testimony that at least two security guards were necessary to monitor the shopping mall effectively); *Tucker,* 689 F.Supp. at 561 (plaintiff presented expert testimony that a guard would have mitigated his injuries). In addition, as noted above, Plaintiff presents no evidence that either of the previous two events should have alerted Defendant that failure to secure additional security guards would cause a third party to commit the type of criminal act that transpired here. *Cf. id.* (no evidence was produced that Kentucky Fried Chicken "had any prior knowledge to anticipate the particular incident that caused plaintiff's injuries or that Kentucky Fried Chicken should have had such knowledge"). Consequently, even if Defendant breached a general duty of care to Plaintiff, Allen's superseding criminal attack

---

7. Plaintiff also alleges that the air conditioning was inadequate to handle the crowd. He fails to support this allegation with any evidence that this condition was a cause of Plaintiff's injuries.

broke the chain of causation between Defendant's breach and Plaintiff's injuries.

## IV. Conclusion

For the foregoing reasons, the court shall grant Defendant's motion for summary judgment.

A separate Order will be entered.